## MARTHA MAGEE v. HENRY K. WHITE.

The separate property of the wife, cannot be charged with the debts of the husband, contracted for necessaries for *himself*, notwithstanding he may be insolvent.

In order to charge the wife's separate estate with debts contracted for necessaries for herself and children, the contract must be made by the wife herself, or by her special authority.

The husband may be her agent to make contracts, that will bind her separate estate; but it is not to be presumed, that he is her agent, because he is her husband. The agency must be such, in fact, and not a thing to be presumed, because of the relation of husband and wife.

Under our system of laws, the liability of the wife's separate estate for necessaries, is regulated by the statute, and it cannot be subjected to liability for necessaries furnished to the husband, by an appeal to the equitable powers of the courts to administer the same remedies as are applicable in equity, to estates limited to the sole use of married women in the hands of trustees. If the like equitable estates were created here, we would undoubtedly look to the principles established by the chancery courts of England and of this country, in the management and control of them.

The law imposes upon the husband, the obligation to support his wife and children. If he have separate property, and there be no common property, it cannot for a moment be pretended, that his separate property cannot be charged for necessaries for the support of his family.

The law permits the wife to contract for necessaries for *herself and children*, and to incur expenses for the benefit of her separate property; and her separate property is bound for such necessaries, and such expenses; but she is under no legal obligation to support the husband, nor can her separate estate be charged even for necessaries for him.

See the opinion in this case, for a review of the cases of Cartwright v. Hollis, 5 Texas Rep. 152; Hollis and wife v. Francois and Border, 5 Id. 195; Christmas v. Smith, 10 Id. 123; Milburn v. Walker and wife, 11 Id. 329; Brown v. Ector and wife, 19 Id. 346; and McFaddin v. Crumpler, 20 Id. 374; from which it appears, that the expressions, to be found in the opinions in those cases, that the wife's separate property might be made liable for necessaries, furnished to the husband, by an appeal to the equitable powers of the courts, are *dicta*, and not to be regarded as the authoritative decisions of the court on that point.

APPEAL from Grimes. Tried below before the Hon. Peter W. Gray. The facts are stated in the opinion.

*J. W. Hutcheson*, for the appellant.

BELL, J.—This suit was instituted by Henry K. White against Felix W. Magee, and Martha Magee his wife, upon a promissory note executed by Felix W. Magee to one William C. Roe, and transferred by Roe to White. The petition charged that the note was executed in settlement of an account for goods, wares, and merchandise furnished and delivered by the said Roe to the defendants; that the goods, wares, &c., so furnished and delivered were for the use and benefit of the said Martha, her children and negroes, and that the said articles were necessary, and reasonable and proper supplies and expenses for a family in like circumstances. The petition contained an allegation, that Felix W. Magee, the husband, was insolvent, and unable to support his wife and family. There was an additional allegation, that the articles furnished by Roe were delivered "for the use of the said Martha and her family, and the proper management and care of her separate property, and to its prosperity." A bill of particulars accompanied the petition. The proof was, that some of the articles were purchased by F. W. Magee, some by Mrs. Magee, some by the husband and wife together, and others by orders through a servant. The husband's insolvency was proved. Witnesses stated that the goods sold were such as were "usual and necessary for a family;" but the witnesses did not state that the articles were necessary for Mrs. Magee's family.

The judge charged the jury as follows :—" If you believe from the evidence, that Magee was insolvent, and that his wife had separate property, and that the goods were bought by her, or by her husband with her authority or assent, at reasonable prices, and that they were such goods as were necessaries for the family, and reasonable and proper for them in their circumstances, or such as are usual and customary in family use, although some of them may have been proper for the husband alone, then you will find for the plaintiff, but otherwise for defendant." The judge also charged the jury upon another point in the case, not necessary now to mention.

There was a verdict for the plaintiff. Judgment was rendered for the amount found by the verdict to be due, with eight per cent. interest, from the rendition of judgment. The decree ordered execution to be levied on the community property of Felix W. and Martha Magee, if any could be found, and in case there was no community property, then upon the separate property of Mrs. Martha Magee.

There was a motion for a new trial. One of the grounds of the motion was, that the court erred in the charge to the jury. The motion was overruled. Mrs. Magee prosecutes this appeal.

We are of opinion that there was error in the charge of the court, in so far as it assumed that the wife's separate property is liable for necessaries furnished to the husband. It has more than once been said, in the opinions of this court, that the wife's separate property might be made liable for necessaries furnished to the husband, by an appeal to the equitable powers of the courts. But we think this question has never been directly presented to the court for adjudication; and we do not, therefore, regard the expressions which are to be found in the opinions to which we have alluded, as the authoritative decisions of this court.

In the case of Cartwright v. Hollis, 5 Texas Rep. 152, the only point before the court related to the ability of a married woman to bind herself and her separate property, by the execution of a promissory note. The question in the case related to the wife's capacity to contract in reference to her separate estate. The question, whether or not the marriage relation imposes upon the wife the obligation to maintain the husband, where she has property and he has none, was not distinctly presented to the mind of the court.

So, in the case of Hollis and wife v. Francois and Border, 5 Texas Rep. 195, the only question before the court was, whether or not the wife could bind herself and her separate estate, by the execution of a mortgage jointly with her husband, and under the solemnities required by law for the absolute conveyance of her separate property. And it is also to be remarked, that in this last mentioned case, the wife's property appears to have been

held by a trustee, and the trustee became a party to the mortgage, by which the wife undertook to bind her separate estate.

The case of Christmas v. Smith, 10 Texas Rep. 123, was the first case in which the proposition was distinctly announced, that independently of the statute regulating the marital rights of parties, the separate property of the wife could be subjected to the payment of debts, contracted by her, or her authority, for necessaries for the family generally, in cases where the husband has no property, and there is none in the community. And in that case, it was said, that the husband is a member of the family, but that a necessary for him is not one which, *under the statute*, would involve the wife's property in responsibility. The distinction was very clearly taken between family necessaries generally, and necessaries for the wife and her children. And the liability of the wife's property, for debts contracted for family necessaries, as distinguished from necessaries for herself and her children, was said to be independent of the statute regulating the marital rights of parties. I shall presently have occasion to recur to this case.

In the case of Milburn v. Walker and wife, 11 Texas Rep. 329, the elaborate opinion of the court was, for the most part, confined to the discussion of the powers of the husband to charge the separate property of the wife, by virtue of the authority which the law gives him, as its sole manager, during the marriage. The question of the liability of the wife's property for the debts of the husband, contracted for necessaries for him, was not presented to the court; for the petition alleged that the articles purchased were necessaries for the wife, her children, and negroes, and the case turned mainly upon the ruling of the court on the demurrer. I shall presently have occasion to allude more particularly to some expressions contained in the opinion of the court, in this case of Milburn v. Walker and wife.

In 19 Texas Rep. 346, is found the case of Brown and another v. Ector and wife, in which the remarks that fell from the court, in the case of Christmas v. Smith, on the subject of the liability of the wife's property, in equity, for necessaries furnished to the

husband, are reiterated, and the proposition announced in the case of Christmas v. Smith, is stated in somewhat broader terms. It was assumed in both these cases, that the suits were brought "exclusively upon the statute,"—meaning the 4th and 5th sections of the act of March 13th, 1848, which constitute Articles 2423 and 2424 of Hartley's Digest. In Brown v. Ector, it was said:—"The statute does not provide relief in cases where the articles sold are family necessaries, but where they are necessaries for the wife, her children, or her separate property." "But," the Chief Justice proceeded to say, "the creditor is not without his remedy, provided it be sought in a mode known to the law. Independent of the statute, the separate property of the wife is liable for family necessaries, in cases where the husband is insolvent, and there is no community property."

The last case on the subject under consideration, which has come to my knowledge, is the case of McFaddin v. Crumpler, 20 Texas Rep. 374; that was characterized, in the opinion of the court, as a suit brought under the 4th section of the Marital Rights Act of March, 1848. The case of Christmas v. Smith was cited as conclusive of the point involved.

It will be observed, that in these cases of Christmas v. Smith, Brown v. Ector and wife, and McFaddin v. Crumpler, it was said, that the suits were brought under the statute, and could not be maintained, because the testimony did not sustain the allegations of the petitions, in the cases respectively. Each of the cases was disposed of on that ground; and it is, therefore, apparent, that the opinions in those cases went beyond the questions presented, so far as the statement, that the wife's property is liable, in equity, for necessaries for the support of the husband, is concerned.

A careful examination of the opinions, in the several cases to which reference has been made, will disclose the fact, that two prominent ideas were always present to the mind of the very learned judge who delivered those opinions. One of those ideas was, that the proceeds of the separate estate of the husband or wife, ought to be held to be the separate property of that one

to whom the estate itself belongs. The other idea was, that the separate estate of the wife, under our laws, ought to be regarded in the same manner as the separate estates of married women, in the hands of trustees, are regarded in England; and that the courts of the country, as courts of equity, ought to exercise a general and a constant supervision over such estates. And it seems to me, to have been the object of the opinions, in the cases referred to, to develop these ideas, and to establish them ultimately in the jurisprudence of this state.

The late Chief Justice has nowhere said, in positive terms, that the proceeds of the separate property of the wife became her separate property; but many expressions in the opinions show, that the strong inclination of his mind was to that conclusion. In the case of Cartwright v. Hollis, speaking of the restriction upon the wife's power to dispose of her separate property, he uses these words: " If none of her effects can be disposed of, but by acknowledgment before a public officer, can the crops produced upon her lands be alienated in any other mode? The cotton, corn, and sugar, are the effects of the wife; (on the supposition that the proceeds of the separate property of the partners, belong to them respectively, and do not fall into the common stock of gains;) and if the statute be strictly construed, as depriving the wife of all power over her separate estate, except exercised in conformity with the mode prescribed, can a sale of these effects be valid, if not acknowledged before the public magistrate?" In the same case, the judge said further: " It is not necessary, in this case, to define what shall be common, or what separate property; and whether the profits and improvements of the private property of the partners, become common property or not." In the case of Christmas v. Smith, the judge said: "I have avoided the expression of any opinion, as to whether the hire of the slaves, or the proceeds of their labor, constituted community property or not." There was nothing in the case which called for any expression of opinion upon the question referred to; and the point was, perhaps, mentioned, only because it was one on which the mind of the learned judge

very much dwelt. These expressions will suffice to show, as I before stated, that Judge HEMPHILL's mind strongly inclined to the conclusion, that the proceeds of separate property, as, for instance, crops, rents, hire, and the like, ought to be held to be separate property. And this inclination will be more obvious, when the expressions above quoted, are considered in connexion with expressions which fell from him on the subject of the authority of the courts, as courts of equity, over the separate property of the wife. In Cartwright v. Hollis, he says: "The distinction between the separate property of the wife, and property limited to her sole and separate use, is not recognized by our laws. The property denominated separate, is regarded as limited to her sole and separate use," &c. Again, he says: "The statute provides for voluntary alienations, and was intended to protect the wife from succumbing, with too great facility, to the operation of influences detrimental to her rights; and to ascertain whether her assent was altogether voluntary. Its influence is salutary; but it was intended to operate only on alienations *in pais*. Charges upon the estate, necessary for its improvement, preservation, &c., are not within the mischief intended to be provided against by the statute. And if the necessity, or propriety, of such charges are scrutinized, before the property be rendered liable, as doubtless they should be, the estate will be more effectually shielded, under the protection of the equitable powers of the court, than it could be, under the ordeal of a voluntary, but private examination before the public officer." Again, in the same case: "The wife should have the power of charging her estate, in proper cases; but the necessity and propriety of the charge may be examined by the court." In the case of Hollis and wife v. Francois and Border, the judge said: "In this state, the separate estate of the wife is now, and always has been, established by law; and it would seem, if the mode for regulating its transfers must necessarily be sought in other systems, that the rules of equitable jurisprudence, or those known to our former laws, should have been consulted, rather than those modes of conveyance, which were known to the common

law." In the case of Milburn v. Walker and wife, it was said, that, " the powers of the husband, as conferred, in this state, by law, over the separate property of the wife, are similar, in some respects, to those vested in the husband, under the rules of equity jurisprudence, when permitted and authorized by his wife, to receive the rents, issues, and profits of estates limited to her sole and separate use." In another part of the same opinion, it is said : " Charges against the separate estate of the wife, should, as a general rule, be defrayed out of its rents, issues, and profits; and the *corpus* of the property should not be sacrificed, except in a case of necessity. And in all cases, where the suit is not brought under the statute, and where it appears from the evidence, that the husband is improvident, intemperate, or will probably misapply the proceeds of the wife's property, the necessary orders should be made, to prevent this misapplication, and to have the debt satisfied in the manner most advantageous to the separate estate."

I desire now to call attention distinctly to the fact, that in the cases of Cartwright v. Hollis, and Hollis and wife v. Francois and Border, the estate of the wife was not the ordinary legal separate estate, created and protected by our constitution and laws, but it was an equitable separate estate, in the hands of a trustee, such as is familiar to the jurisprudence of England. But in the other cases which have been cited, the estate of the wife, which the court was called upon to charge, was the ordinary legal separate estate of the wife, known to our own laws.

In the case of Shelby v. Burtis, 18 Texas Rep. 644, the views which had been announced in Cartwright v. Hollis, in Hollis and wife v. Francois and Border, and in Milburn v. Walker and wife, were brought down from the regions of speculation, and made to apply directly to the ordinary legal separate estate of the wife, as known to the constitution and laws of Texas. In that case, the question was distinctly presented, whether or not the wife can bind her statutory estate, by the execution of a mortgage, to secure the payment of a debt due by her husband. Judge HEMPHILL fully appreciated the distinction

between that case, and the cases of Cartwright v. Hollis, and
Hollis and wife v. Francois and Border, where the wife's estate
was a trust estate and not a statutory estate. He says, "We
have repeatedly decided, that since the introduction of the com-
mon law, a wife can make a valid mortgage of her separate estate,
for the payment of her husband's debts. This was the reverse
of the rule previously in force under the Spanish law. Con-
tracts under that law, in which the wife joined with her husband
as surety, were absolutely void, and those in which she joined as
a co-obligor merely, were void, unless they proved advantageous
to herself. It is not to be disguised, that her condition, to say
the least, has not been improved by the change. Had her free-
dom of action been increased in a degree commensurate with her
power to bind her estate, there would have been a manifest im-
provement on the ancient law. But her estate is now, as it was
in former times, under the control of her husband. She has not
the power to dispose, as a *feme sole*, of the *corpus* of her statutory
estate, nor to receive and take for herself its profits, as a mar-
ried woman has over her separate equitable estate, as recognized
and sustained by courts of equity. And it was in relation to
this latter species of estate, and to the powers of a married
woman over such estate, that the rule giving her authority to
encumber her estate for the benefit of her husband, was intro-
duced." This passage brings into clear view the points which
I am desirous to present. Here it is admitted, that as to the
wife's statutory estate, it is now, as it was in former times, under
the control of her husband; that she has not power, as a *feme
sole*, to dispose of the *corpus* of such estate, nor to receive for
herself its profits; but because it is a separate estate, it shall be
regarded as a separate equitable estate, and the same rules,
(with some modifications, perhaps, compelled by the statutes,)
shall be applied to it, as are applied by courts of chancery in
England, to estates limited to the sole and separate use of mar-
ried women, in that kingdom. Without consuming time by
quoting further from the opinions, I think it will be obvious,
from what has been thus briefly noticed, that their whole ten-

dency is to the building up of a system, in which all distinction will be destroyed between the statutory estate of a married woman, and an equitable estate, limited to her sole and separate use; a system in which every married woman, who has a separate estate, will become a ward of chancery, and her husband converted into a trustee for the management of her estate, under the supervisory power of the courts, and subject to be controlled by the court or removed from his trust, whenever the court becomes dissatisfied with his management; or whenever it becomes necessary to make orders to prevent the misapplication of the rents, issues and profits of the estate.

It will, I trust, be understood, that these observations are not made in a spirit of criticism, and that they do not proceed from any want of respect for the able and learned judge who delivered the opinions in the cases to which I have made reference. Much less will it be supposed, that what has been said is dictated by a disposition to treat with too little consideration, the former decisions of this court. I have thought it necessary to say as much as has been said, in order that the views entertained by a majority of the court, and the grounds of our present judgment, may be fully understood. I could never entertain the opinion that a judge is at liberty to assail or question the former decisions of the court of which he is a member, from mere caprice; or that former decisions ought to be overruled, because of a difference of opinion between later judges, and those by whom the decisions were pronounced. The general rule, founded in wisdom and propriety, undoubtedly is, that former decisions ought to be respected and followed, notwithstanding there may be differences of opinion. But men do not become infallible because they are clothed with authority; and reasons may exist, and oftentimes do exist, which constrain courts to abandon positions which have once been assumed. In the search after truth, we are sometimes attracted by false lights, and lose the way; and if we happen to fall into error, it certainly is not the part of a wise magistrate to adhere to it, when it can be renounced without injury to the public interests.

While, therefore, we do not feel ourselves called upon, at the present time, to question any of the authoritative decisions of this court, in the cases which have been referred to; and while we do not desire to be understood as intimating any disapprobation of those decisions, upon the points involved in the cases, we think it not out of place to say, that whenever we are convinced that any decision of this court has proceeded upon a mistake of the law, we shall esteem it our duty, carefully to consider the propriety of adhering to such a decision; and we shall not hesitate to act in such manner, as, in the exercise of our best judgment, a due regard for the law, and for the public good, may require.

As an original question, we should certainly hesitate long, before we could give our assent to the proposition of the late Chief Justice, that the statutory estate of a married woman, is subject to the same rules which apply to the equitable estate, limited to the sole and separate use of a married woman in England. And we would hesitate as long, before we could base judicial action upon the supposition, that the mode for regulating the transfers of the separate estates of married women, in this state, must necessarily be sought in other systems of laws than our own.

Estates limited to the sole and separate use of married women, in England, were always, and necessarily, the creatures of contract. They were created by deed or by will; they were always in the hands of a trustee ; and the rules adopted by the Courts of Equity, for the administration of such estates, depended very much upon the stipulations contained in the instrument, by which they were created. If the like equitable estates are created here we would undoubtedly look to the principles established by the chancery courts of England, and of this country, in the management and control of them. But aside from the obligation which we are under, to follow the law where it prescribes rules for our guidance, it may well be doubted, whether the system which has been built up by the chancery courts, for the administration of the separate equitable estates of married women, commends itself

so strongly to our admiration, as to vindicate its application to the statutory estates of married women, in this state, instead of the simpler and homelier system, plainly indicated by our constitution and laws. For a great American chancellor, after reviewing, in his commentaries, the leading decisions of the chancery courts, on the subject referred to, was constrained to say, that "the cases are sometimes discordant in the application of their doctrines, and perplexingly subtle in their distinctions."

The very object of creating an equitable separate estate for the wife, in England, was, to prevent the husband from controlling and managing it; whereas, our laws declare, that the husband shall have the sole management of the wife's separate estate during the marriage. And it is clear, that by our law, it is intended that the husband shall receive the proceeds of the lands and slaves of the wife, and that he may dispose of the same; because the law provides, that if he shall fail or refuse to support the wife, from the proceeds of the lands and slaves she may have, or to educate her children, as her fortune will justify, she may complain to the proper court, and the court may decree, that *so much of such proceeds*, shall be paid to the wife, for the support of herself, and for the nurture and education of her children, as the court may deem necessary; by which it is clearly implied, that, in the first instance, the husband is entitled to receive these proceeds; and that even in the case of an application to the court, only *so much of such proceeds* shall be controlled by the court, as the necessities of the case may require.

We have, at the present term of this court, at this place, expressed our unanimous opinion, that crops grown upon the wife's land, by the labor of the wife's slaves, become the common property of the husband and wife. At the last term of this court, at this place, it was decided, all the members of the court concurring in the opinion, that the increase of all other separate property, besides lands and slaves, becomes community property. (Howard v. York, 20 Texas Rep. 670.) With the light furnished by the statutes, and by these decisions, it seems to me, that our way should be plain. On the one hand, it is the evident policy

of the law, to protect the *corpus* of the wife's separate estate from being squandered. On the other hand, the law declares that the husband, during the marriage, shall have the sole management of the wife's separate estate. Now, if the husband, as the legal manager of the estate, has authority to bind it by his contracts made in the management of it, as was said in Milburn v. Walker and wife; and if he can further bind it, for necessaries for himself, as was said in Christmas v. Smith, and in Brown v. Ector, it will follow, that the intention of the law, to preserve as nearly intact as possible, the *corpus* of the wife's estate, may come, by these means, to be defeated. And if the wife can contract, with reference to her separate estate, in the same manner, that a married woman, in England, can contract in reference to an estate, limited to her sole and separate use, then it will follow, that by this means again, the estate may be consumed, and the husband's right to manage it, will the more easily be taken from him.

We are of opinion, that the law imposes upon the husband, the obligation to support his wife and children. If he have separate property, and there is no common property, it cannot for a moment be pretended, that his separate property cannot be charged for necessaries for the support of his family. The law recognizes him as the head of his family. It declares, that he shall support his children, because every man is under obligation to provide for those descended from his loins. (Blackstone.) It declares, that he shall support his wife; first, upon the theory that her existence is merged in his; and secondly, because her duties, while cohabiting with her husband, are held to form the consideration of his liability for her proper maintenance. (Kent.) In this state, he may devote his separate property to the support of his family; or if there be common property, he may devote that to their support. In addition to this, the law permits the wife to contract for necessaries for herself and children, and to incur expenses for the benefit of her separate property; and her separate property is bound for such necessaries and such expenses. But I can find nothing in our statutes,

nothing in the common law, and nothing in the decisions of the courts of chancery, which supports the proposition, that the wife is under any legal obligation to support the husband, or that her separate estate can be charged, even for necessaries for him. In the case of Ann Walker, (reported in Lloyd & Gould, Cases in Chancery, page 299,) a proposition was made to charge the separate estate of the wife with a certain sum for the maintenance of two children. The wife, before her marriage, was a ward of chancery. She had a large estate. Her husband induced her to marry without the consent of the court. After the birth of the two children, the wife eloped from her husband and committed adultery; the adultery was proven in an action for criminal conversation, against the paramour. Under these circumstances, the motion was made to charge her separate estate with the maintenance of the children, and her improper conduct, amongst other considerations, was urged in support of the motion. The Lord Chancellor, SUGDEN, said: "As to her subsequent misconduct, no case ever came before the court, in which, on account of the misconduct of the wife, the court has provided for the children, living the wife, out of her property, much less varied a settlement in effect already made. No such right exists; the mother is not bound to provide for the children; she is not bound to maintain her husband and children out of the property to which she is entitled for her separate use." In the case of Magwood and Patterson v. Johnston and others, 1 Hill's Chancery Rep. 228, Chancellor HARPER said: "The idea seems to be, that if articles are furnished, or money advanced, to the husband, and employed by him in the support of his family, and he afterwards turns out insolvent, it is sufficient evidence that he was not of ability to support them, and the creditors have an equity to charge their account on the wife's or childrens' estate. It seems fair, that they who have received the benefit of the creditor's advances, should satisfy him out of their own property. There seems to be several difficulties in the way of establishing such a doctrine. The husband, the wife, and the children, have all received their share of the benefit from money laid out in

family expenses, and if they have distinct property, it should seem that they ought to contribute in proportion to the benefit received. But there would be great difficulty in apportioning the contribution among them. The wife and children are not bound to support the husband and father, though they may be obliged to support themselves." The Chancellor then proceeded to say, that, "If all accounts raised by the husband for the support of his family, are to be charged on the separate property of the wife and children, when he proves unable to pay, it would always be in his power to squander his own property, and contrive to charge his family expenses on the estates of the wife and children, thus defeating the objects of the trust."

So we think that if, in this state, the wife's property is to be held liable for articles furnished to the husband, because they are necessaries, it will be in the husband's power to squander the proceeds of the property as it comes into his hands, out of which he should support himself and his family, and charge his expenses for necessaries upon his wife's separate estate; thus subjecting it to a burden which the law never intended it to bear. If this is permitted, it will be difficult to stop short of an equity system, uncertain and oppressive, in which, as has been before said, the separate estate of the wife shall be placed under the constant supervision of the courts; and as a part of which, the courts will exercise authority to control or remove the husband from the management of his wife's property, whenever they may think proper to do so, to prevent waste, misapplication of proceeds, &c. To adopt such a system, I think, will be found, upon reflection, to be impossible; because it can only be done by the overthrow of principles already established, and because it cannot consist with the general scope and spirit of our constitution and laws, on the subject of common and separate property. As to the manner in which the wife may charge her separate estate for necessaries for herself and children, this court has frequently said, that the contract must be made by the wife herself, or by her special authority. The husband may be her agent to make contracts that will bind her separate estate; but it is not to be

presumed that he is her agent, because he is her husband. The agency must be an agency in fact, and not a thing to be presumed, because of the relation of husband and wife.

In the case before us, there was no evidence that the husband acted as the wife's agent, in making those purchases, which are shown to have been made by him.

We think there was error in the charge of the court, in the particular pointed out in this opinion, and that the motion for a new trial ought to have been sustained. Judgment reversed and cause remanded.

WHEELER, C. J., dissented from the opinion of the court.

Reversed and remanded.