## KING v. KING. (No. 6301.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1920. Rehearing Denied March 10, 1920.)

1. HUSBAND AND WIFE ⚖️133(5)—EVIDENCE INSUFFICIENT TO SHOW THAT PROPERTY WAS PURCHASED WITH SEPARATE FUNDS OF HUSBAND.

In an action by a husband against his wife to establish his interest in land to which the wife held the legal title, evidence *held* insufficient to show that the land had been purchased with funds belonging to the husband's separate estate.

2. HUSBAND AND WIFE ⚖️131(3)—BURDEN IS ON HUSBAND CLAIMING PROPERTY STANDING IN WIFE'S NAME BECAUSE OF IMPROVEMENTS MADE TO SHOW WHEREIN HE SHOULD BE REIMBURSED.

Where a husband asserted rights in lands standing in his wife's name, on the theory that he had out of his separate funds paid for improvements, the husband has the burden of showing wherein his separate estate is entitled to reimbursement.

3. HUSBAND AND WIFE ⚖️133(1)—EVIDENCE INSUFFICIENT TO SHOW WIFE WAS INDEBTED TO COMMUNITY ESTATE IN EXCESS OF AMOUNT FOUND.

In an action by a husband who asserted rights in property standing in the name of his wife, evidence *held* insufficient to show that the wife was on account of such property indebted to the community estate in excess of the amount found.

4. HUSBAND AND WIFE ⚖️4 — NO DUTY ON WIFE TO SUPPORT HUSBAND.

At common law no duty rested upon the wife to support the husband.

5. HUSBAND AND WIFE ⚖️126(3)—WIFE IS NOT BOUND TO DEVOTE RENTAL OF SEPARATE PROPERTY, THOUGH HOMESTEAD, TO SUPPORT OF HUSBAND.

Where a wife used as a lodging house property which the spouses occupied as a homestead, the wife is not bound to use the profits from the lodging house for the support of the husband.

6. APPEAL AND ERROR ⚖️877(4)—WHERE PARTY INJURED BY ERRONEOUS DECISION DID NOT APPEAL, APPELLATE COURT WILL NOT DISTURB RULING.

In an action by a husband to establish his rights in his wife's separate property, where the trial court erred in adjudging a lien on the separate property to secure payments of a sum due the community estate, and the wife did not appeal, or in any way object, the error will not be corrected on appeal by the husband.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by W. O. King against Mrs. Nettie G. King. From the judgment, plaintiff appeals. Affirmed.

Spears & Mongomery, of San Benito, for appellant.

F. W. Seabury and O. C. Dancy, both of Brownsville, for appellee.

MOURSUND, J. This is a suit by W. O. King against his wife for the purpose of establishing the extent of his ownership or interest in lot 1, block 31, in the city of San Benito, and the improvements thereon situated, consisting of two two-story brick buildings. He pleaded that he had made an agreement with his wife shortly after their marriage to the effect that he would permit her to keep and care for their separate and community money, and that thereby in time they would accumulate a sufficient amount to provide them a home and comforts for their old age; that thereafter Mrs. King had and exercised control of the money coming from their separate estates as well as their joint earnings up to or about the time of the institution of the suit. He then alleged that in 1906 they purchased a lot at Olmito for $50, paid out of the separate funds of Mrs. King; that they improved it to the extent of $486.65, which was paid out of the separate funds of plaintiff, and afterwards to the extent of $65, also paid out of the separate funds of plaintiff; that said property was sold for $600, and that plaintiff's interest in the proceeds could not be less than $550; that with $500 of such proceeds the lot in San Benito was bought; that therefore plaintiff owned a nine-tenths interest in said

lot in his separate right; that said lot was improved at an expense of $6,000 for the two buildings and $2,238 for changes, etc., all of which were paid out of the community funds except sundry items paid out of the separate funds of plaintiff.

Mrs. King denied these allegations and alleged that the property was her separate property. She also filed a cross-action. There were other pleadings, but it will suffice to say that, taken in all, they were sufficient to raise the issues presented on this appeal.

The court found that lot 1, block 31, in the town of San Benito was the separate property of Mrs. King, and adjudged same to her, but that some community funds were used in improving same, and therefore adjudged that the sum of $1,000 be fixed as a charge against said premises in favor of the community estate. In this connection it was decreed that a lien existed against the premises for such sum, and that they should be sold as under execution unless Mrs. King paid plaintiff $500 in satisfaction of his half of said charge. The terms of the judgment are only stated in so far as contentions with reference thereto are made upon this appeal. Mr. King appealed.

[1] The first contention is that it appears from the great preponderance of the evidence that the San Benito lot was purchased with funds of which $50 belonged to the separate estate of the wife and $450 the separate estate of the husband. The rule is well established concerning the extent of preponderance of testimony necessary to justify an appellate court in setting aside a verdict or judgment. We find no such preponderance in this case. On the contrary, we think the preponderance supports the finding of the court. The agreement pleaded by plaintiff and testified to by him was denied by the wife, and it was shown on the trial that the allegations in two of his petitions differed with respect to when and where the agreement was made. If true, it shows no more than that he agreed to let her hold all money he could spare, community or separate, so they would accumulate enough to purchase a home in North Texas. The statement of facts is replete with testimony on his part to the effect that he made her his "bank" or "trust," but it seems that he was very reluctant to trust her with any money acquired by him. He testified to no sum of any consequence given by him into her keeping except $83 received by him from the sale of a horse while he was living at Mercedes. She was at that time living at Olmito. She testified this was in payment of money he owed her, and she bought a horse with it; that the sum was $79.50. He admitted borrowing $100 to have funds to go and get his wife at the time they married, and that he borrowed from her to pay such debt. He states he repaid it, but does not show when or how or deny that the $83 was in repayment of such sum. Of course, Mrs. King testified to another loan by her to him to enable him to buy a stock of goods, but that is contradicted by him. The record discloses that in May, 1906, he opened a bank account at Brownsville with a deposit of $20 and made deposits every few days until about November 1, 1906, which was about the time he moved up to Mercedes to live with his daughter; also that in the following May he deposited $250 in said bank, which he drew out in small sums. He testified he received $250 or $300 for the stock of goods when he sold out; also that he had checks for several hundred dollars during the first few months after the making of the alleged agreement. All of these funds were retained by him, and not turned over to Mrs. King. In fact, his contention as to community funds which passed into her hands is principally limited to the theory that she collected from boarders and deposited such sums in her name. We conclude that the trial court was warranted in finding that no such agreement was made as was claimed by him.

When the Olmito lot was bought, Mrs. King insisted on paying for it, and the deed was made to her. She testified that at that time it was agreed between her and her husband that, if she would erect a building on her lot, he would buy a stock of goods and run a store in such building. It is useless to go into details. Her testimony affords a reasonable explanation of their further acts as detailed by her. She testified she furnished the money for all improvements upon the lot, except that King paid about $41 for ceiling, which he made her a present of. She is corroborated by the fact that in addition to the bills she obtained through her husband a receipt in her name for $283 worth of material, and that some other sums were paid for by her checks. On the other hand, Mr. King testified that he paid for all material except some post office fixtures, and introduced the testimony of the manager of the lumber company to the effect that he paid for $486 worth of material with checks on New Mexico banks payable to him. There appears to be some confusion as to this lumber transaction, as the record discloses that the bill for $486 did not include the $283 which Mr. King contended it did. Be this as it may, the court was warranted in finding that Mrs. King gave her husband the money to pay for all of the material except that paid for by her checks and the ceiling. As her agent, he could not, by electing to pay with checks belonging to him instead of her money, affect her legal rights. It would seem that, as Mrs. King insisted on buying the lot, it would be natural for some conversation to occur concerning why her husband should pay for the improvements. He failed to detail any such conversation, or to af-

ford any reasonable explanation concerning why they should decide for her to own the lot and for him to own the improvements. It could not have been the result of the alleged trust agreement; for it was not intended that this should be the home to be acquired by the fund, and the agreement did not seem to contemplate that he would improve her separate property for speculative purposes. She was much better able to improve her property than he was, and no good reason has been offered why he, and not she, should pay for the improvements. We conclude that the court was fully warranted in finding that the funds derived from the sale of the Olmito property were owned by Mrs. King as her separate property. This being the case, it is immaterial whether the San Benito lot was purchased with such funds, as is contended by appellant. Such funds were deposited by Mrs. King in the Brownsville bank, and appellant contends that it was understood that $500 thereof should be used to purchase the San Benito lot. Mrs. King testified she bought the lot with $500 received from the sale of real estate owned by her. As a matter of fact, Mrs. King had quite a large sum on deposit with the Brownsville bank at the time and also had a deposit at the San Benito bank. The deed was delivered through the San Benito bank. It was dated May 15, 1909, and Mrs. King testified she paid the money and got the deed, while Mr. King said the cashier wrote out a check for Mrs. King to sign. If it be true that the check was written, then it could hardly have been the $500 check appearing in the statement of the Brownsville bank as paid on May 8, 1909. Whatever may have been the understanding prior to about May 9 or 10, 1909, if Mrs. King's testimony is true, and the court was fully warranted in finding it true, it was then definitely agreed between her and her husband that the lot should be bought as her separate property. She said the first deed that came did not contain the recital that the consideration was paid out of her separate funds and that the lot should be her separate property; that she rejected the deed and then went to see Mr. Pierce at Brownsville, who drafted a deed for her and sent it to the grantor. That deed contained the proper recitals. It is true that Mr. King and the grantor testified there was only one deed, and the grantor said he had the recitals inserted because Mr. King told him the deed was to be made to Mrs. King. Mrs. King is strongly corroborated by the fact that the deed is written on Mr. Pierce's office stationery and is dated May 15, 1909, while on May 11, 1909, a letter was written Mrs. King by Mr. Pierce stating that he had prepared and forwarded the deed. Mrs. King testified her husband was with her on these occasions, and that it was fully understood and agreed that she should purchase the lot as her separate property. If there had been an agreement to appropriate community funds to the payment or separate funds of his, it would conclusively follow that he intended to make a gift to the wife. In the absence of such an agreement the law would certainly charge her separate estate with the consideration; that is, if she gave a check on her account, and had separate funds sufficient to pay it, which she did, the law would apply such funds to the payment of the check in view of the agreement testified to as having been made to the effect that she should purchase the lot as her separate property. She is further corroborated by the fact that in another case Mr. King testified that the lot was her separate property and paid for with her separate funds. He undertook to explain that he was laboring under a misapprehension at the time, but based his change of front on the grantor's testimony, which in turn seems to have been based upon an inaccurate recollection of the circumstances surrounding the making of the deed. The court was fully warranted in finding that the San Benito lot was the separate property of Mrs. King. The first assignment of error is overruled.

The second and third assignments read as follows:

"(2) The evidence clearly and satisfactorily shows that the lot in controversy and the improvements thereon were paid for with community funds, and it was error for the court to adjudge that said property was the separate property of the defendant.

"(3) The defendant failed to trace with certainty any of her separate funds into the payment for said lot and the improvements thereon, and the court erred in holding that said property was her separate property."

It will be sufficient answer to these assignments, which are submitted as propositions, to say that the evidence does not substantiate either proposition. The evidence does not show that the lot and improvements were paid for with community funds, and it does show that defendant did trace with certainty the investment of funds separately owned by her into the lot and the improvements.

The fourth assignment reads as follows:

"If the last preceding assignment should be overruled, plaintiff makes the further assignment of error that the improvements upon the said San Benito lot cost about $8,000, and that the evidence fails to show any of the separate funds of the defendant were used for the payment of said improvements, and, even if it should be held that the lot on which said improvements are situated is the separate property of the defendant, the court erred in holding that the separate estate of defendant owed the community of plaintiff and defendant only $1,000."

[2, 3] The proposition is based upon an erroneous theory of the law. If the lot is sep-

arate property of the wife, as recited in her deed and found by the court. the burden would certainly not be upon her to show to what extent the improvements thereon were made with her separate funds. The houses are a part of the lot and are separate property of the wife, and the presumption obtains that they were constructed with separate funds. If the husband claims that his separate estate or the community estate should be reimbursed on account of funds used in making such improvements. the burden is upon him to show to what extent such right of reimbursement exists. If $1,000 is not the correct amount due the community estate, appellant should point out the testimony relied on to show that a greater sum is due. We have gone over the evidence referred to and copied from in the statement, and agree with appellee that the only evidence clearly showing the investment of any community funds in the improvements is the admission of appellee that $375 on the original building and $540 on the annex, total $915, was paid out of rents collected from the buildings. It may well be doubted whether there was any intention on Mr. King's part to claim such sums in behalf of the community estate until this suit was instituted. Much is said concerning the $2,500 derived from the sale of 20 acres near San Benito. The court was fully justified in finding that such land was purchased with the separate money of Mrs. King. She so testified, and Mr. Coleman testified that the sale was made to her at a time when she was living at Olmito and her husband was living at Mercedes; also that afterwards, when he told Mr. King of Mrs. King's purchase, he disapproved of it vigorously because he wanted her to buy at Mercedes, but said it was bought with her money, and if she wanted to buy such stuff she had a right to do so. Appellant seems to depend in a general way on the proposition that appellee did not have sufficient separate money to make the payments she claims to have made, but in view of the profit on the 20 acres, and the fact that the proceeds of the sale of the Olmito lot was her separate property, it seems clear that she was amply able to make the payments testified to by her. When the evidence is examined closely, it appears that the improvements cost about $6,825, as contended in appellee's brief, of which amount appellee still owed the sum of $650. According to the tabulation in appellant's argument, the maximum amount of property claimed by appellee at the time of the marriage was $6,000, but it appears that she made a profit of $1,700 on the 20 acres, and that she lost about $200 on the Olmito property. This would give as a maximum for her separate estate $7,500. If we deduct the $915 paid in rents from the $6,175 actually paid out, we have the sum of $5,260, which appellee claims to have paid out of her separate funds. We are not prepared to say that the evidence does not sustain such claim on her part.

The testimony does not indicate any such success in business matters during the married life of the litigants as would justify the belief that they had accumulated any community property. It is profitless to speculate on what the items in Mrs. King's bank account indicate, or to draw inferences from such account as to her total separate estate; for she also kept an account with the San Benito bank, the items of which are not shown in the statement of facts. The record discloses that Mrs. King pending the suit was compelled by the court to pay her husband $820.39 out of rents of the buildings, which rents under the married woman's act of 1917 became her separate property. If this was taken into consideration by the court as a payment, he must have estimated the community claim to reimbursement at $2,640.58, and the judgment indicates that this was the case. We are unable to find any evidence to sustain a finding that the community estate had a claim for reimbursement to the extent of $2,640.58, but the judgment is not complained of by appellee.

[4, 5] The fifth assignment reads as follows:

"By the uncontradicted evidence it appears that said property is the homestead of plaintiff and defendant; that plaintiff owns no other property and has no income; that on account of advanced age and ill health he is unable to make a living for himself, and the court, having adjudged said property to be the separate property of the defendant, erred in holding that he (plaintiff) was not entitled to maintenance and support, commensurate with his station in life, out of the revenues arising from said homestead."

The statement under the assignment supports the statements of fact made in the assignment of error, but we do not understand that such facts entitle appellant to the relief he prays for. At common law no obligation rested upon the wife to support the husband. Magee v. White, 23 Tex. 180; Speer's Law of Marital Rights in Texas, § 156. It cannot be held that the enlargement by the Legislature of the right of married women to contract and providing that the income from their separate property shall constitute separate property instead of community alters the rule as announced in the decisions of our Supreme Court with reference to the legal obligations resting upon the wife. While appellant stresses the fact that the revenues he desires appropriated to his support are derived from the homestead, he points to no statutory enactment which would justify the court in holding that a different rule applies with reference thereto than to the rentals of separate property not the homestead; in other words, the contention must stand or fall upon the issue whether there is a legal duty resting upon a wife to support her husband. The fourth paragraph of the judgment reads as follows:

"That plaintiff and defendant, although their marital relations have not been dissolved, are living separate and apart, in different portions of the buildings on said premises, the plaintiff occupying one room therein, and that the entire lower story of said buildings is rented out for commercial purposes, and all rooms in the upper story, except the two mentioned, are used by defendant for the purpose of a lodging house, and that the conditions aforesaid have existed, with the full consent of the parties hereto, for several years last past. It is therefore ordered and decreed that nothing herein contained shall affect the homestead rights of the parties hereto, and that, so long as said marital relation shall exist, the plaintiff shall have and enjoy, free of all rent or charge, the right of using, occupying, and dwelling in a room on the second story of that portion of said buildings known as the 'Annex' to the original building, which room is now designated and numbered room 10, being the third room from the front of said annex, same to be under his sole control and management and to be kept and maintained by him, and that the defendant, during the same period, shall have and enjoy the right to rent or lease the remainder of said building and improvements, or such portions thereof as she may not choose to occupy for her residence, and to collect and receive, use and disburse as her sole and separate estate all the rents, revenues, and earnings thereof, without any liability to account to plaintiff for same or any part thereof."

The findings of fact therein made are not challenged. No contention is made that appellant is unduly restricted with reference to his personal use of the homestead. The court correctly held that he had no authority to require Mrs. King to support her husband.

[6] The court, in adjudging a lien upon the separate realty of the wife to secure the payment of a sum due the community estate, and awarding a foreclosure and order of sale, appears to have gone further than is warranted by our decisions. See Rice v. Rice, 21 Tex. 58; Schmidt v. Huppmann, 73 Tex. 112, 11 S. W. 175; Summerville v. King, 98 Tex. 338, 83 S. W. 680; Schwartzman v. Cabell, 49 S. W. 116. We call attention to the fact that no complaint is made of this by appellee, and that our decision involves no approval of the holding thus made.

The judgment is affirmed.