CLAYTON'S ADMINISTRATOR AND OTHERS V. J. FRAZIER.

I. Plaintiff sued. the heirs and administrator of a married woman for title to land which had been her separate property, and for which she and her husband had executed to plaintiff a bond for title on his payment of the purchase money; but there was no privy examination of the married woman as to her voluntary execution of the bond. Plaintiff's petition alleged payment of the purchase money, possession since his purchase, valuable and permanent improvements by him, and that the married woman did in fact execute the bond voluntarily, and never wished to retract it. Defendants demurred to the petition, relying on the want of the privy examination of the married woman. *Held*, that the petition presented a case for equitable relief by specific performance, and that the demurrer was rightly overruled. Womack v. Womack, 6 Texas, 397, and Dalton v. Rust, 22 Texas, 133, cited by the court, and the rulings therein on this question, approved.

2. The statute (Paschal's Dig., Art. 1003,) prescribing the mode of conveying separate property of married women does not necessarily invalidate all conveyances otherwise made. The voluntary execution by the wife may be established by proof, and a case be made on which the conveyance will be sustained in equity, notwithstanding there was no privy examination of the married woman.

3. Though an incompetent witness was erroneously permitted to testify by the court below, yet when the same facts testified to by him were also fully established by other and unobjectionable evidence, the error will be regarded as immaterial.

4. On a bill for specific performance of a title bond for land. the court below adjudged that plaintiff recover the land, and that title be divested from defendants and be vested in plaintiff; but this court, though sustaining the judgment in substance, reforms it and decrees that the defendants,

within thirty days from the close of the term, do make to the plaintiff a deed in fee simple, and that in default of such conveyance this decree do stand as title to him.

APPEAL from Fayette. Tried below before the Hon. George W. Smith.

The material facts of this case are clearly stated in the opinion of the court. The cause was submitted to a jury, who returned a verdict for the plaintiff. A new trial being refused, the defendants appealed.

*L. Lindsay*, for the appellants.—The first error assigned is the overruling of the demurrer. This assignment strikes at the foundation of the appellee's cause of action. Under it two questions arise, viz.: First—Can a married woman convey her separate real estate in any other mode than that prescribed by the statute? (O. & W., § 207.) Second—If she can, does the petition contain such a statement of facts as will authorize the enforcement of a contract to convey, not executed in the manner prescribed by the statute?

At the common law, the wife could not convey her real estate. (2 Kent, fifth edition, 150; Whitaker v. Blair, 3 J. J. Marshall Ky. R., 241.) In equity, she could charge her estate. But "the doctrines of courts of equity as to the power of married women over their separate estate are not recognized as rules by which the powers of married women over their separate estates under our statute, and their consequent liabilities, are to be determined." (Hollis and wife v. Francois and Border, 5 Tex. R., 198.) In the above case the Chief Justice said: "The statute has prescribed a special mode for the conveyance of the separate property, and unless this mode be pursued, the wife has no power to charge her separate estate except for necessaries," etc. In the case of Callahan v. Patterson and Patterson, 4 Tex. R., 61, the court held that the wife was not responsible on a bond for title similar to that

sued on in this case, although it was proven that the purchase money was for necessaries for the family. They also say that the "privy examination of the wife is indispensable to the conveyance of her separate property." In Kentucky, under a statute similar to that of Texas, the court hold that the privy acknowledgment of the wife is indispensably necessary to a valid conveyance of her separate property. (Steel v. Lewis, 1 Monroe R., 49.)

It cannot be said, in support of the judgment of the court below, that the proceeds of the sale were reinvested for the wife's benefit, for this would authorize the husband, in violation of the statute, and without the consent of the wife, to dispose of her property at pleasure. Under the Constitution she is entitled to hold her separate property, and the statute prescribing the mode by which she may convey it, is made for her protection and her benefit.

In the case of Miller v. Shackelford, 3 Dana, 299, (Ky. R.,) the court hold that the reinvestment by the husband of the proceeds of the sale for the benefit of the wife, will not support the sale.

The appellee has in his petition shown no such equity as will sustain the court in enforcing the performance of the obligation in said bond; nor in giving the complainant judgment for his improvements, or for the purchase money, as against the administrator. There is no fraud alleged against the deceased, Mrs. Clayton. True, she permitted the appellee to make improvements on her land, if a married woman can permit such a thing in any other than the mode prescribed by the statute. A married woman is not presumed in law to look after her separate property. This duty devolves on her husband. Were she held responsible for not preventing such improvements on her land, she is afforded poor protection by the law. If such improvements are made on the land of the husband, without his consent, express, or constructive, he will not be required to pay for them. The wife can only con-

sent in the formal manner prescribed by the statute. It would be different had she expressly directed such improvements to be made under promise of conveyance, and had herself received the benefit thereof.

But in the case at bar, it is not proposed to hold her responsible for any positive act of hers, but for not preventing the improvements made by the appellee. This would interfere with the marital relation, in requiring the wife to run counter to the wishes of her husband.

The appellee ought not to recover back the purchase money from the estate of Charlotte Clayton, because he shows by his petition that he paid her nothing.

He executed his notes, as shown by his petition, to the husband, H. R. Clayton, and paid one of them to him. The other two, he alleges, passed into the hands of the administrator of Charlotte Clayton, but he does not say that they were not regularly negotiated by the said H. R. Clayton, nor how they got into the hands of the administrator. But we will not argue further the error of overruling the demurrer, as there are other points which we think must reverse the judgment.

The appellee has no equity to support his claim as against the appellants. He is presumed to have known the law. He must have known what was necessary to convey the separate property of the wife. Having undertaken to purchase land from a person incompetent to sell, except in the manner prescribed by the statute, he is not entitled to the favorable consideration of the court.

But the appellants proposed in their answer to refund any purchase money which may have come wrongfully into their hands.

The administrator was a stranger to the transaction, and received the unpaid notes from the hands of the surviving husband, at the suggestion of the latter, as assets of the estate.

*Webb & Jarmon*, for the appellee.—First—The appellants contend, that the court erred in overruling their demurrer, and

under their first assignment of error insist that Mrs. Clayton, being a married woman at the date of the title bond, could only convey her separate property in the mode and by the forms required in the statute (O. & W. Dig., § 207), and if she could do so, the facts of appellee's case do not authorize the enforcement of this contract for a title.

We are not to look to the common law for precedents, nor for authority, concerning the separate conveyance of a wife, in this State, nor the mode of conveyance. " The principles and rules of the common law, as to the effect of coverture, so far as they affect the capacity of the wife to hold property in her separate right, are totally expunged from our code of jurisprudence, and in an investigation of the rights of the wife must be altogether discarded from consideration." (Edington v. Mayfield, 5 Tex. Reps., 363.) " Husband and wife are not one under our laws; the existence of the wife is not merged in the husband." (Wood v. Wheeler, 7 Tex. Reps., 13.)

That a married woman can convey her separat eestate without her privy examination, in the mode required by the statute, has been positively decided by this court; we refer the court to the case of Womack v. Womack, 8 Tex. Reps., 397.

How applicable is this decision to the one now before the court? The appellee has proven every fact to show Mrs. Clayton's willingness to this trade, and that she never wished to retract it; to the day of her death. The case does not rest alone on the testimony of H. R. Clayton, as the appellants contend. Mrs. Bridges and Mrs. Green both speak of it, and tell the causes why she had sold it—to build her a house on her separate property. All the witnesses concur on the point of her recognizing the contract; living in the immediate vicinity of appellee; knowing of his improving the place, etc. The facts in this case are even stronger than those in Womack v. Womack. The appellants refer to the case of Callahan v. Patterson, 4 Tex. R., 61, as an authority that a married

woman connot convey property without a privy examination, etc., The court will perceive, from the facts of that case, that no possession was taken by the party purchasing, nor other causes that would raise an equity in favor of the purchaser. The case cited by appellants, of Hollis and wife v. Francois and Border, 5 Tex. R., 198, was a case of a creditor seeking to make a wife's separate property liable for a debt. It has no application to the facts of this case, nor was a similar remedy sought.

Where a married woman, whose privy acknowledgment had never been taken to a bond, after the death of the vendee, sued and had the land sold to pay the purchase money due, and received it, " she was estopped by her action in the county court, and by the fact that she afterwards received the purchase money, from setting up any defect in in the bond." (Dalton v. Rust, 22 Tex. Reps., 133.) She was estopped by her own act, and not by privy examination.

Second—The statute of frauds of this State says, that a sale of land must be in writing, or some written memorandum thereof. (O. & W. Dig., 223, Art. 936, § 1.) The language is positive and emphatic. Yet how often has this court, following in the footsteps of the great principles of equity decisions, declared that a purchaser by parol, of land, paying even a part of the purchase money, and taking possession of the land, would be decreed a title. ·(Duggan v. Colville, 8 Tex. Reps., 126 ; Ottenhouse v. Burleson, 11 Tex. Reps., 87 ; Reynolds v. Johnston, 13 Tex. Reps., 214.)

These illustrations go to show, that courts of equity will not suffer themselves to be made the engine of oppression for a mere technicality ; and that where matters are proven to have arisen outside of the plain letter of the law, which would make it manifestly unjust to enforce the rigid rule, that courts of equity will rise above it and do justice between the parties.

Third—There is no plainer principle of equity and justice than

than that a court of equity will not rescind a contract when the parties could not be placed in *statu quo*, or in language of this court in Womack v. Womack, before cited, "and especially if the recision of the contract would be greatly to his detriment, and he could not be placed in the condition in which he would have been had no such transaction taken place."

How could appellee be placed in his former position without great detriment to himself?

There is no possible chance of it. To refuse appellee a title would be to ruin him. He bought this land in good faith in 1854, believing with Clayton and wife that he was getting a legal contract at three dollars per acre. Now, after a lapse of about six years the land has enhanced in value by his own labor, and is now worth ten dollars per acre; and surrounding lands in the neighborhood have also arisen to the same price.

Fourth—Suppose the contract between Clayton and wife and appellee had have been a verbal one, and under that contract the appellee took possession of the land and made valuable improvements thereon, and paid the purchase money, could he not have enforced a specific performance from Clayton and wife? "When the vendee, in a parol contract for the sale of land, by and with the consent of the vendor, went into possession of the land as his own, for years, without any objection on the part of his vendor, the court decreed a conveyance of the title upon the payment of the balance of the purchase money due." (Duggan's heirs v. Colville's heirs, 8 Tex., 126.)

The same thing is decided in the following cases, viz.: Otterhouse v. Burleson's heirs, 11 T. R., 87; Burleson v. Burleson, 11 T. R., 2; and Reynolds v. Johnston, 13 T. R., 214. Between H. R. Clayton and appellee there can be no question but that appellee could force a title upon the facts of this case if the original contract had been a verbal one. Upon what principle of law or equity would Mrs. Clayton be excluded from the operation

XXXIII—7

of· these decisions ?    She is as capable of holding property and being bound by her acts as her husband.    It must be solely on the ground that she could only bind herself in the mode pointed out in the statute.    We do not perceive why she should be excepted on the facts of this case.    It was not even asserted that she was deceived, defrauded, or that she did not get the benefit of the purchase money.    The testimony is all the other way.

Fifth—The evidence shows that appellee purchased with the belief that his title bond was legal and binding upon Mrs. Clayton. She believed the same.    She always acknowledged the contract binding on her until her death, knew of appellee's possession, etc. To permit her or her heirs now to repudiate the contract, would be to permit her or them to take an advantage of their own wrong. " The acts and representations of a wife in respect to her rights of property, made to deceive, and which do deceive others to their injury, will be binding upon her; and she will be precluded from asserting her claim against those who have confided in and acted upon her representations and admissions, or who have been deceived to their prejudice by her fraudulent acts."    (O'Brien v. Hilburn, 9 T. R., 297.)

"There is no principle which can sanction and give legal effect to fraud by which an innocent person has been deceived to his prejudice, by whomsoever or whatsoever capacity committed.    There is no person or class of persons, capable of contracting at all, at liberty to perpetrate frauds upon others, to their injury with impunity; not even infants and married women, who, for the most purposes, are incapable of contracting so as to bind themselves, are exempt from the obligation to observe, in their dealings with others, the dictates of natural justice and common honesty."    (Crayton v. Munger, 9 T. R., 285.    See also Hartwell v. Jackson, 7 T. R., 576; Howard and wife v. Worth, 5 T. R., 290; and Cravens v. Booth, 8 T. R., 248.)

Now, if there are no positive " declarations " of a positive

character shown in this case, such as above mentioned, certainly there is every " act," on the part of Mrs. Clayton, shown that is necessary.   She knew, and all the parties knew that the land was her separate property; she joined in the contract of sale; she knew when appellee went into possession, and the improvement of the land; she spoke of what she intended doing with the money, to-wit: to build her a house on her property; she lived for three years after the sale; always recognized the contract; was in the immediate neighborhood of appellee and made no objection all the time.   What could make the case stronger in this point of view? We contend that she and her heirs are estopped from setting up a claim now to the land or denying its legality.

Upon the principle of Womack v. Womack, and the other authorities hereinbefore cited, the court did not err in overruling the demurrer of appellants.

WALKER, J.—Clayton and wife sold 300 acres of land to the appellee for the sum of $900, to be paid in instalments of $450, $225 and $225.   Mrs. Clayton owned the land in her separate right.   The first, and part of the second note, were paid during the lifetime of Mrs. Clayton, who died in August, 1857.   Neill McKinnon was duly appointed her administrator.   In his inventory of the estate of Mrs. Clayton he returned the unpaid balance of the Frazier notes as assets.   Subsequently he gave up the old notes and took a new note from Frazier, with Lane as security, dated December 27, 1857.   The evidence shows payment of this note in cotton.   Frazier took possession of the land at the time of purchase, September 2, 1854, and went on making valuable and permanent improvements.   Mrs. Clayton lived a neighbor and saw the improvements made, and acquiesced, received the money paid during her lifetime, and used it in making improvements upon her own homestead.

On the fourteenth day of October, 1859, Frazier filed his peti-

tion for specific performance, and prayed the court to decree him a title to the 300 acres of land. McKinnon, the administrator, and the minor heirs of Mrs. Clayton, were duly made parties. Guardians *ad litem* for the minors were appointed. The defendants demurred to the petition, urging as ground of demurrer that Mrs. Clayton was a married woman at the execution of the title bond; that the land claimed was her separate property, and that the bond showed no privy examination of Mrs. Clayton. The demurrer was overruled, and the defendants appealed to this court. The evidence clearly establishes the fact that Mrs. Clayton signed the bond with her own free will and accord; that she treated the sale as *bona fide* up to the time of her death; that so much of the purchase money as was paid in her lifetime she used in building a house upon her homestead, and that she spoke of making Frazier a deed not long before her death.

The rule of law is well settled in other States, that even a verbal contract for the sale of land, accompanied with payment of the purchase money, possession and improvements, is good in equity and will be specifically enforced.

It is claimed that the court below erred in admitting the surviving husband, Henry R. Clayton, to testify as a witness on the trial, on the ground that he was an interested witness. This objection cannot be sustained for the reason that the same facts sworn to by him were abundantly proven by other witnesses, and the character of his interest does not clearly appear; but the main error insisted on, if it were error, is the overruling of the demurrer to the petition.

The cases of Womack's Administrator v. Womack, 6 Texas, 397, and Dalton and wife v. Rust, 22 Texas, 133, are conclusive of this point; indeed the equities of the case are so plain that it is difficult to imagine an honest difference of opinion.

In Womack v. Womack the court say: "The statute which prescribes the mode of conveying the wife's property does not ex-

pressly declare absolutely void any other mode of conveyance. It seems, from its terms, to have had but one object in view, and that was to secure the freedom of will and action on the part of the married woman; and when the proof is clear as to the freedom of will on her part, and the transaction commends itself in point of equity to the conscience of the court, particularly if the party contracting with his wife cannot be restored to his former position, the conveyance will be sustained, notwithstanding the want of a privy examination under the statute."

Now the evidence is perfectly clear that Frazier would not be restored to his former position; he purchased the land for a home, he he has labored upon it for most of his lifetime, improved it, enhanced its value by his labor and improvements; all the thousand sacred associations of home cluster around it, and about it; he has acted in good faith, and there is not the slightest evidence to show that Mrs. Clayton would ever have acted in bad faith, if she had lived. She was only too willing to sell some of her broad acres for money to improve and adorn the ample endowment she had remaining after her sale. Money was more to her than land, and the brawny arm and sturdy industry of Frazier would make money, and make him too a home, and the parties could, as they did, live as neighbors and in peace.

The judgment of the district court is so far affirmed that it is the judgment and decree of this court, that within thirty days from the rising of the court, the appellant do make the appellee, his heirs or assigns, a deed in fee simple for the three hundred acres of land described in the petition, and that in default of his so doing, this decree do stand as and for a sufficient title for said land to the appellee. And that the appellant, McKinnon, pay the costs in the district court and in this court, out of the assets of the estate of Mrs. Clayton in his hands, if there be assets, and if there are no assets, that he then pay them out of his own money.

Reformed and rendered.