# FIFTH DISTRICT, 1895.

## MARY E. STOOKSBERRY V. M. SWANN ET AL

### No. 963.

**1. Deed of Married Woman—Proof of Execution upon Affidavit of Forgery.**

A deed executed in 1849 by a married woman and her husband, when offered in
evidence, was attacked by affidavit as a forgery. There was endorsed thereon a
certificate in due form of the separate acknowledgment of the wife taken before
a notary, but the seal of the notary had become obliterated, except some particles
of red wax adhering at the place where the seal is usually affixed. Held, that the
deed was properly admitted in evidence, together with all the facts and circum-
stances attendant upon and surrounding its execution, and that it was properly
left for the jury to determine whether or not its execution was proved.

**2. Same—Proof of Notarial Character.**

The signature of the notary having been proved, and his official character as
notary being only collaterally involved in the issue, it was sufficient to show by
parol evidence that he was acting as notary.

**3. Same—Signature of Wife by the Husband.**

There being evidence tending to show that the deed was signed by the hus-
band, both for himself and for the wife, and that the wife acknowledged the deed,
the court did not err in charging that the deed must have been signed by the wife,
or some one for her, and at her instance, and whether or not it was so signed was
for the jury to determine from the evidence.

**4. Same—Effect of Obliteration of Seal.**

If the notary attached his seal, the fact that the seal afterwards became oblit-
erated would not invalidate the certificate, and it was proper for the court to in-
struct the jury as to what was a legal seal, and to submit the question whether
such seal was affixed to the certificate.

**5. Same—Failure to Record Deed in the County Where the Land Lies.**

The deed not being offered in evidence as a recorded instrument, and no ques-
tion of notice being involved in the issue, was admissible in evidence, although it
had not been recorded in the county where the land was situate.

APPEAL from Hunt. Tried below before Hon. E. W. TERHUNE.

*J. G. Matthews; Perkins, Gilbert & Perkins* and *Leake, Henry &
Reeves,* for appellants.—1. The deed of a married woman, in order
to pass title to real estate the separate property of the wife, under the
act of the 30th of April, 1846, must be both signed and acknowledged
by the wife, and this can only be shown by the signature. Hartley's

Digest, art. 174; Stevens v. Motl, 81 Texas, 119; Boothroyd v. Engles, 23 Mich., 19; Koltenbrook v. Cracroft, 36 Ohio, 574.

2. The privy acknowledgment of a married woman can be proved only by a statutory certificate of the acknowledgment of her deed, under official seal. McKellar v. Peck, 2 Posey, 192; McKellar v. Peck, 39 Texas, 387; Coffey v. Hendricks, 66 Texas, 676; King v. Russell, 40 Texas, 121; Texas Land Co. v. Williams, 51 Texas, 51; 1 Devlin on Deeds, secs. 489, 492; Railway v. Carter, 24 S. W. Rep., 1083.

3. The deed of a married woman cannot be introduced in evidence as proven by the certificate of acknowledgment, unless the deed, with the certificate attached, has been recorded in the county where the land, or a part of it, is situated. Land Co. v. Chisholm, 71 Texas, 523; Hancock v. Lumber Co., 65 Texas, 225; Wiggins v. Flieshel, 51 Texas, 61.

4. Parol evidence cannot be received to show the official character of the person or seal employed by such person on making a certificate of acknowledgment where the character of the seal does not appear upon the face of the certificate of acknowledgment. Coffey v. Hendricks, 66 Texas, 676; Abbott on Trial Evidence, sec. 77, p. 428.

5. In a suit of trespass to try title, parol evidence cannot be received to aid a defective certificate of acknowledgment to a deed sought to be introduced as a link in the chain of title of either plaintiff or defendant. Coffey v. Hendricks, 66 Texas, 676.

*Matthews & Neyland, R. R. Neyland, M. M. Brooks,* and *Woolridge & Fagan,* for appellees.—1. A conveyance is not invalid because of the fact that the grantor signs it by a wrong name if the true name is recorded in the body of the deed, and the party also acknowledges it in the proper name; and between the parties a conveyance of property by the owner by any name will transfer the property. Middleton v. Findley, 25 Cal., 76; Fallon v. Kehoe, 38 Cal., 44; Lyon v. Kain, 36 Ill., 362; 1 Dev. Deeds, sec. 188.

2. An affidavit of forgery has no force where the deed is offered, not as a recorded deed, but as an ancient deed over 30 years old. Parker v. Chancellor, 73 Texas 475.

3. An ancient impression of a seal attached to a notarial certificate of authentication, and which has been defaced by time so as to have become undistinguishable as to its character, is presumed to have been made with a proper notarial seal of office unless the contrary be shown, and should be submitted to the jury as a question of fact. Lawson, Presumpt. Ev., 55; Stephens' Dig. Ev., arts. 87, 101; Monroe v. Alredge, 23 Texas, 480; Hammond v. Gordon, 6 S. W. Rep., 94; Geary v. City of Kansas, 61 Mo., 379; Morfleet v. Russell, 64 Mo., 177; Addis v. Graham, 88 Mo., 199; Parkinson v. Coplinger, 65 Mo., 290; Stooksberry v. Swan, 21 S. W. Rep., 695.

4. The deed of a married woman can be introduced in evidence as an ancient instrument, provided it was fortified by her privy acknowledgment properly authenticated. Parker v. Chancellor, 73 Texas, 479,

as well as opinions in this cause rendered on former appeal above cited.

5.  It was not necessary for Eliza Ann Hamilton to sign her name to said deed to give it validity.  If signed there by any person and she acknowledged the same properly before a notary and he made proper certificate of the same properly authenticated, it was valid.  Walter v. Weaver, 57 Texas, 571.  Tiedman on Real Property, sec. 807, and authorities there cited.  See also authorities cited under first assignment of error.

6.  The affidavit of forgery had no force as against the deed of Eliza Ann Hamilton when offered as an ancient instrument over 50 years old, and as no testimony was adduced impeaching her signature as forged, the charge could not have injured appellants, by any findings of the jury as to her signature.  Parker v. Chancellor, 73 Texas, 475; Stooksberry v. Swan, 21 S. W. Rep., 695.

LIGHTFOOT, CHIEF JUSTICE.—This is a suit of trespass to try title brought in the District Court of Hunt County, Texas, by petition in the ordinary form, filed by appellant, Mary E. Stooksberry, joined by her husband J. S. Stooksberry, November 25, 1889, against the appellees, M. Swann et al., for 2300 acres of land of the Hammond Smith survey in Hunt County.

Appellees answered by general demurrer, general denial, not guilty, and improvements in good faith.  The case came on for trial January 3, 1894, and resulted in a verdict and judgment for appellees from which this appeal was taken.

We find the following facts:  1.  That the land in controversy was patented to the heirs of Hammond Smith, deceased, February 6, 1860, and the patent recorded February 9, 1890, in Book C, page 463, Hunt County records.

2.  That Eliza Ann Hamilton, formerly Eliza Ann Smith, was the only child and heir at law of Hammond Smith; that Hammond Smith died in 1836, leaving Eliza Ann Hamilton, formerly Eliza Ann Smith, his only child and heir at law.

3.  That Eliza Ann Smith, the only child of Hammond Smith, was married to Robert W. Hamilton February 2, 1842, with whom she resided as his wife until March 2, 1849, when she died.

4.  That Mary E. Stooksberry, plaintiff in this case, was the only child and heir at law of Eliza Ann Hamilton; that plaintiff Mary E. Stooksberry married her co-plaintiff, J. S. Stooksberry, February 2, 1863.

5.  That defendants herein have a regular chain of title from the heirs and executors of John Stiles, deceased, down to each of defendants for the tract of land claimed by each, respectively, in his or her answer.

6.  That both plaintiffs and defendants claim under Eliza Ann Hamilton as a common source.

7.  That on December 12, 1843, Eliza Ann Hamilton and her husband, Robert Hamilton, made to John Stiles a transfer of 2942 1-2

acres out of the unlocated land certificate issued to the heirs of Hammond Smith by the Board of Land Commissioners for Red River County, No. 545, first class, dated March 27, 1838, and authorized him to locate and have surveyed for himself that number of acres out of the certificate, he to pay the expense of such location and survey. They also attempted to bind themselves in said instrument to make title to said land when patented, but such instrument was witnessed by two witnesses, and no privy acknowledgment of the wife was taken so as to bind her to convey realty.

8. The land in controversy was located by John Stiles for himself under the above transfer of a part of said certificate on April 25, 1844, and he caused a survey to be made and returned to the General Land Office, which survey was subsequently corrected by him in his own name and for his own benefit.

9. January 4, 1849, Eliza Ann Hamilton and her husband, Robert W. Hamilton, executed to John Stiles a deed to all the land embraced in such location (which includes the land in controversy, and also 640 acres mentioned below) and in such deed authorized the patent to be issued to said John Stiles in his own name. At the same time John Stiles executed to said Hamilton and wife a bond for title to 640 acres of land, when patent should be issued to him upon such survey (which bond for title was subsequently complied with by the heirs of John Stiles by a conveyance of said 640 acres).

10. That after such deed was executed, it was deposited in the General Land Office among the papers of such survey, which was the proper custody for it, as such deed authorized the issuance of the patent to John Stiles by the Commissioner of the General Land Office, and said deed remained there until after this suit was brought, and was conveyed to the District Court of Hunt County under orders of that court. Under the above facts the superior title to the land in controversy became vested in defendants.

1. The first assignment of error objects to the admission in evidence of the deed from Eliza Ann and Robert W. Hamilton to John Stiles, dated January 4, 1849, upon eighteen different grounds; but as only five different propositions have been urged thereunder, we will confine our investigation to such propositions, believing that their consideration will determine the merits of all the questions raised.

The original deed has been sent up with the papers for our inspection. It has the appearance and all the indications of a very old instrument, and purports to convey to John Stiles, in consideration of $1500 paid, the receipt of which is acknowledged, a survey of sixteen labors six hundred and eleven thousand nine hundred and thirty-two square varas of land, surveyed by virtue of certificate No. 545, first class, issued to the heirs of Hammond Smith, describing the land, and covenanting therein that the grantors, Robert W. and Eliza Ann Hamilton, "own and hold

and are lawfully seized thereof and have a good right to sell and convey the same, the patent therefor to be issued in the name of said John Stiles or his legal representatives." The deed is signed in the names of the grantors, the name of Eliza Ann being run together, as though awkwardly signed. It was witnessed by Geo. S. Young and T. T. Barney, and acknowledged on the day of its execution before Geo. S. Young, notary public, Red River County, by Eliza Ann Hamilton, her privy acknowledgment being taken, and upon the lower left hand corner of the certificate, at the usual place for a seal, is a round, dark and slightly red place, about the usual size of a notarial seal, upon which are still left some particles of red wax, giving an appearance of an old seal of red wax having once been affixed there. The deed also has upon it a certificate of proof, in usual form and under seal, before Geo. F. Lowten, clerk of the County Court of Red River County, by George S. Young as a subscribing witness, dated October 11, 1851; also a certificate of record in Red River County, January 14, 1853. It was proved that Geo. S. Young was a notary public of Red River County at the time the deed was executed, and made his own seal of soft metal, which had a Texas star with five points and letters cut into the metal, and in order to make an impression he used wax upon the paper and impressed the seal upon the wax. His handwriting to the certificate of privy acknowledgment was also proved. It also appeared that at sometimes he used a notarial seal which would impress paper. It was shown by John W. Stiles, a son of John Stiles, that he was present at his father's house, a boy about sixteen years of age, when Robert W. and Eliza Ann Hamilton were there, and that Geo. S. Young and Jno. O. Wilkinson were there; that he thinks Wilkinson wrote the deed, and that it is in Wilkinson's handwriting, and witness understood that Hamilton and wife were there to fix up the land transaction and convey the land to his father, but he does not remember about the acknowledgment or seal. That John Stiles claimed the land from the time Hamilton and wife and the above named parties were at his father's house up to his death. It was also shown that when the deed was first brought into court at a former trial, it had much more wax on the place for the seal than is now there. The objections to the deed presented in the propositions are—(1) that the deed was not signed by Eliza Ann Hamilton; (2) that the privy acknowledgment of the wife can only be proved by a statutory certificate of acknowledgment, which was not done; (3) that the certificate is not valid in the absence of a statutory seal; (4) that a married woman's deed to be evidenced by a certificate of privy acknowledgment under seal, can only be introduced after the deed has been recorded in the county where the land is located; (5) that the deed was not shown to have come from the proper custody so as to admit it in evidence as an ancient document.

In considering the instrument, the seal being almost obliterated, we must look at all the facts and circumstances surrounding it. It is claimed by appellants that the deed was signed "Elicia Ann" and not

"Eliza Ann." We do not regard this objection as tenable under the facts. An inspection of the original deed will show that while the signature is awkwardly written and perhaps badly spelled, yet it was clearly intended for "Eliza Ann," and was so written in the body of the deed and so acknowledged.

The certificate of the officer taking the acknowledgment was in substantial compliance with the statute. If there was no seal affixed to the certificate at the time it was made, the certificate would be invalid, and the deed could not be admitted in evidence. If there was a legal seal affixed at the time, the acknowledgment being perfect and the deed delivered, the title to the property passed, and could not be divested by a subsequent defacement or destruction of the seal, or even of the instrument itself. Property rights do not rest upon such a frail and imperfect tenure. If the facts and circumstances shown in the testimony are sufficient to prove that at the time the deed was executed and the acknowledgment taken, the officer affixed a legal notarial seal to his certificate of acknowledgment, and that it has been subsequently lost or destroyed, the objection to the deed upon the ground that it has no seal can not be maintained. In the first place, the deed was more than forty years old at the time it was offered in evidence; it comes from a proper custody; it presents no appearance of having been tampered with, but it was fairly shown that it had not been changed except by time since it was deposited in the General Land Office in 1856; the appearance of the original deed would indicate that a notarial seal upon wax had once been affixed thereto; it was shown that the notary public who took the acknowledgment had a notarial seal and was accustomed to using it upon wax; the previous transactions between the parties tended to show a sale of the certificate by Hamilton and wife to Stiles on December 12, 1843; that the latter had located the land in controversy in his own name, and was entitled to a deed, and that the parties, with the notary, assembled at Stiles' residence to make him a deed; that after the deed was executed, Stiles always claimed the land as his own, and subsequently the deed was deposited in the General Land Office with the papers in the location, and evidently with the view of getting the patent issued in his own name. We can see no force in the objection that the deed was not admissible because it was not recorded in Hunt County. The primary object of registration is notice. In this case there is no question of notice involved. Article 2257, Sayles' Civil Statutes, also establishes a rule of evidence. Hancock v. Tram Lumber Co., 65 Texas, 225. It is provided by statute that every instrument which is permitted or required by law to be recorded, and which has been legally recorded shall be admitted as evidence without the necessity of proving its execution, unless an affidavit of forgery be filed. In this case an affidavit of forgery was filed, which called out all the facts and circumstances surrounding the instrument which tended to prove its execution. The deed was not offered in evidence as a recorded instrument under that section of the statute, and even if it had been recorded in Hunt County

with a perfect certificate and seal, under an affidavit of forgery it would have been necessary to have shown its execution otherwise than by the certificate, because that section of the statute only provides for its introduction, without proof of execution, when no affidavit of forgery is filed.    Parker v. Chancellor, 73 Texas, 475.    The deed was properly admitted with all the facts and circumstances in evidence, and it was for the jury to determine whether or not its execution was proved.    None of the objections to the introduction of the deed in evidence are well taken.    Stooksberry v. Swann, 21 S. W. Rep., 695, same case in Supreme Court, 22 S. W. Rep., 966; Monroe v. Arledge, 23 Texas, 480; Lawson on Pres. Ev., 55; 1 Devlin on Deeds, sec. 188.

2.    Under the second and third assignments of error, appellants complain that the court overruled their objection to the testimony of the witnesses Henry Cornelius and John W. Stiles, that George S. Young was a notary public, and made a seal which had a star and some letters cut on it and which he would use by impressing it upon wax.    The official character of the notary as a public officer was not directly in issue, but was only collaterally involved, and it was sufficient to show by parol evidence that he was acting as such.    1 Greenl. Ev., 92; 3 Greenl. Ev., 483.    The fact that the seal sometimes used by him was impressed upon wax, was a circumstance in connection with the wax found on the instrument in evidence, at the place where the seal is usually fixed, and the objection was properly overruled.    The testimony only strengthens the legal presumption which is properly indulged for an ancient instrument of this character, coming from the proper custody, with marks indicating clearly that a seal had once been affixed.    Coffey v. Hendricks, 66 Texas, 676.    The certificate of the officer to this instrument, as well as to others introduced in evidence, clearly show his official character, and the objection on that point is immaterial.

3.    The objection of appellants to the third paragraph of the court's charge was to the effect that the court erred in charging the jury that the deed must have been signed by Eliza Ann Hamilton or some one for her at her instance, and whether or not it was so signed was for the jury to determine from the evidence.    There was evidence tending to show that the deed was signed by Robert W. Hamilton, and that he signed both signatures, but the wife acknowledged the deed.    The charge of the court, taken as a whole, is an admirably clear presentation of the questions at issue, and we find no error in it.

4.    Under the sixth and seventh assignments, appellants object to the fourth paragraph of the court's charge, which submits to the jury the question—whether there was a legal seal attached to the officer's certificate to the deed.    In order to do this, it was proper for the court to instruct the jury what was a legal seal, and to submit the question whether such a seal was affixed to the certificate.    The charge was proper.

5.    Under the eighth assignment of error, appellants complain that the court refused to grant a new trial, because the evidence is not suffi-

cient to sustain the verdict. We think the verdict is amply sustained
by the evidence. The court in its charge to the jury, and the counsel
on both sides, seem to acquiesce in the issues as submitted by the court
to the jury as to the execution of the deed by Hamilton and wife to
Stiles. We find in the statement of facts what seems to be a valid
transfer from Hamilton and wife to Stiles of 2942 1-2 acres out of the
Hammond Smith certificate (which had not been located), and author-
izing him to locate that much for himself. Such instrument is dated
December 12, 1843. Stiles located the certificate upon the land in con-
troversy and had it surveyed April 25, 1844, and returned the field notes
to the General Land Office, which were subsequently corrected for him.
It is well established in this State that even a parol sale of an unlocated
land certificate is valid, and when the vendee locates such certificate
upon land which is subsequently patented, he becomes the equitable
owner. Parker v. Spencer, 61 Texas, 155; Stone v. Brown, 54 Texas,
334; Walters v. Jewett, 28 Texas, 192; Hearne v. Gillett, 62 Texas, 25;
Randon v. Barton, 4 Texas, 289; Miller v. Railway Co., 132 U. S., 684.

In the case of Parker v. Spencer, above, this rule was applied to a
married woman, and the assent of her husband was presumed after a
great lapse of time. Under this rule, the fact that a written transfer
by the husband and wife was not acknowledged before an officer, the
certificate being personal property, would not invalidate the sale.

We presume, however, there must have been some reason not clearly
apparent to us, why the learned court below instructed the jury only to
consider this evidence in determining the issue of forgery of the deed
of January 4, 1849, and why the eminent counsel in the case have not
urged this point; and acting upon this presumption, we have placed our
decision upon the questions presented by them.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Delivered December 7, 1895.


ON REHEARING: .

LIGHTFOOT, CHIEF JUSTICE.—In response to a suggestion in the
original opinion filed by us in this cause, as to the grounds for the ad-
mission in evidence of the transfer from Hamilton and wife to Stiles,
in 1843, of an interest in the land certificate, before its location, which
said evidence was confined by the charge of the court below to the
issue of forgery of the deed from Hamilton and wife to Stiles, appel-
lant's counsel, in their motion for rehearing, present the question as
if our decision had been based upon that transfer, when we expressly
state in the last clause of the opinion that such is not the case. Appel-
lant's counsel refer in that connection to the act of February 3, 1841
(Hartley's Dig., 173), which provides that, "when a husband and his
wife have sealed and delivered a writing purporting to be a conveyance
of any estate or interest in land, slave or slaves, or other effects, the

separate property of the wife," if she appears before certain named officers and is privily examined, then the following certificate, in substance, shall be given by the officer. We think there is nothing in this act, under a fair construction, providing that her sale of her personal property must necessarily be under such privy acknowledgment, or even in writing at all, in order to be valid. The Supreme Court seems to have been in doubt for many years, if in fact the question has even been authoritatively settled, how far these statutes should be considered imperative when applied to the wife's separate personalty. In the case of Womack v. Womack, 8 Texas, 414, which was a case involving the transfer of a slave, the separate property of the wife, without her privy acknowledgment, Chief Justice Hemphill held that the conveyance passed the title. This case has been frequently referred to by the Supreme Court, and the doctrine there announced sometimes criticised and doubted, and afterwards referred to with approval. Gregory v. Van Vleck, 21 Texas, 40; Dalton v. Rust, 22 Texas, 133; Berry v. Donley, 26 Texas, 737; Clayton v. Frazier, 33 Texas, 91; Fitzgerald v. Turner, 43 Texas, 79; Johnson v. Taylor, 60 Texas, 365; Williams v. Ellingsworth, 75 Texas, 482; Angier v. Coward, 79 Texas, 554.

It will be observed, however, that in every case where the doctrine has been called in question, it was in the sale of real estate or slaves, both of which were required by the statute of frauds to be made in writing in order to be valid. Act January 18, 1840, vol. 4, page 28; Hartley's Dig., art. 1451. We know of no case where the question has been directly involved which holds that it was necessary, in order to pass title to the wife's personal property (except slaves), that such sale should be evidenced by writing under a privy acknowledgment.

It has been repeatedly held that land certificates, before location, are personal property and subject to parol sale. Cox v. Bray, 28 Texas, 261, and authorities cited in our original opinion.

Under our views of the case, we do not hestitate to say that if it should be necessary to hold that the sale from Hamilton and wife to Stiles of an interest in the unlocated land certificate in 1843, the purchase money being paid and the subsequent location of the land in controversy by Stiles under the certificate, vested in him an equitable title to the land, we should be strongly inclined to that position.

But, inasmuch as that transaction was followed up by a deed from Hamilton and wife to Stiles, vesting in him the full legal and equitable title to the land, we feel satisfied that the justice of the controversy has been reached under the issues adjudicated below.

The motion for rehearing is overruled.

*Overruled.*

Delivered January 4, 1896.

Writ of error refused.