E. L. ANGIER AND WIFE v. M. M. COWARD.

No. 2791.

1.  **Title Bond by Married Woman Enforced.**—A married woman can execute a valid bond for title or an executory contract to convey her separate real estate when joined by her husband and the instrument is properly acknowledged. Courts will enforce specific performance in such case against the wife.

2.  **Conveyance of Wife's Separate Property.** — The leading purpose of the statute (article 4310, Revised Statutes) prescribing the character of acknowledgment to any conveyance affecting the separate property of the wife was to secure freedom of will and action on part of the wife.

3.  **Same.**—The statute (Revised Statutes, article 4310) does not attempt to define the character of conveyance or contract which would be necessary to transfer the title to the wife's separate property. Nor is such instrument changed or its legal effect altered by the privy acknowledgment of the wife. That examination is necessary to the validity of the instrument to the extent of showing that she executed it voluntarily, etc.

4.  **Bond for Title.**—A bond for title in this State it is well understood passes the superior title to the land in equity.

5.  **Wife's Right to Retract.** — In the due execution by the wife of a title bond for land, her separate property, with privy acknowledgment and joined by her husband, the rights and liabilities of the parties to the instrument then attached, and they should not be impaired or affected by or made subject to the subsequent retraction by the wife. She had previously exercised and exhausted this right.

6.  **Case Limited.**—Goff v. Jones, 63 Texas, 249, limited to executory contracts for the conveyance of the homestead.

ERROR from Walker. Tried below before Hon. Norman G. Kittrell. The opinion gives a statement.

*McKinney & Leigh,* for plaintiffs in error.—Under the laws of this State a married woman can not convey her separate property by a title bond or an executory contract or agreement to convey the same, and neither the legal nor equitable title to such property passed by such an instrument. Rev. Stats., arts. 559, 4310, 4311, 4313; Jones v. Goff, 63 Texas, 248; Berry v. Donley, 26 Texas, 737; Fitzgerald v. Turner, 43 Texas, 79.

*Abercrombie & Randolph,* for defendant in error, cited Rev. Stats., art. 4331; Wright v. Thompson, 14 Texas, 560; Scarborough v. Arrant, 25 Texas, 132; Patton v. King, 26 Texas, 686; Warren v. Jones, 69 Texas, 462; Jones v. Goff, 63 Texas, 248; Brightman v. Reeves, 21 Texas, 77; Jones v. Hutchinson, 21 Texas, 370.

HOBBY, PRESIDING JUDGE.—The question of controlling importance in this case, and which is presented under several assignments of error, is in effect whether a married woman can execute a valid bond for title, or executory contract to convey her separate real estate when she is joined by her husband and the instrument is properly acknowledged. Or, stated

in another form, whether our courts can in a proper case decree a specific performance of such a contract against the wife.

Plaintiffs in error, who were husband and wife and plaintiffs in the court below, executed on September 14, 1882, to the defendant, M. M. Coward, their bond for title to convey to him the land in controversy, the separate property of Mrs. Ida Angier, in consideration of the sum of $100 then paid by the defendant, and the execution by him of two promissory notes each for $200, due respectively on the 1st day of January, 1884 and 1885.

It appears that Mrs. Angier was desirous of disposing of the property and the defendant was by his vendors placed in possession under the bond. Mrs. Angier testified on the trial that "she wished to retract the bond for title executed by her." On February 24, 1887, the plaintiffs brought suit in the usual form of trespass to try title against the defendant to recover the land.

The answer set up the contract for the sale of the land, the payment of $100, and the execution of the notes mentioned. It was also alleged by the defendant that plaintiff Angier transferred the notes in 1884 to D. D. Alston, and that subsequent thereto and before the institution of this suit the defendant had paid said notes to Alston's legatees, Alston having died in 1885.

There was a claim for compensation for improvements set up by the defendant, and a prayer that title to the land be vested in him or the money paid by him be refunded, etc.

Angier and wife filed general and special exceptions and general denial, and answered specially, admitting the execution of the title bond and notes as alleged by Coward, but averred that the land sued for by plaintiffs was the separate property of the plaintiff Ida J. Angier, who was a married woman at the time said title bond was made, and the said title bond was a nullity and that neither the legal nor equitable title passed thereby to Coward; that the promissory notes had never been the property of Alston or his legatees, but had been delivered to Alston in April, 1884, by the plaintiff E. L. Angier as collateral security for a loan of $250, procured at the time from Alston by Angier, with the understanding that said loan was not to bear interest until September 1, 1884. They pleaded in reconvention to defendant Coward's demands for improvements a balance of $21.25 for rent; for $6.21 money loaned said Coward by them; for $200, the alleged value of the wood cut off the premises sued for by Coward; and for $100 per annum as the rental value of the premises from September 14, 1882.

They averred the payment by them of the taxes on said premises since September, 1882, except for the year 1886, and prayed for judgment for the title and possession of the same and for general relief, and that said Ida J. Angier wished to retract said title bond.

They also averred the death of Alston in 1885, and that he left a large estate to his surviving children, Mrs. Delha Eastham, Mrs. Mary E. Oliphant, and T. A. Alston, by will duly probated, and prayed that they be made parties defendant to the suit; and in case they were not entitled to the relief asked against Coward, and it there appeared that Coward has paid the notes to Alston's legatees, believing them to be the absolute owners of said notes, that plaintiffs have judgment against said legatees for the amount due on said notes with interest, less the amount of the loan procured by Angier from Alston on April 2, 1884, with interest from September 1, 1884, at the legal rate; and in case it should appear that Coward had not paid said notes, that plaintiffs have judgment against Coward with foreclosure of their vendors' lien.

Alston's legatees were made parties defendant and accepted service and answered, excepting generally and specially to plaintiffs' first amended supplemental petition, and in answer thereto they averred that their testator paid a draft of date April 3, 1884, for $25 drawn on him by the plaintiff E. L. Angier, which was agreed between them should be included in the amount for the payment of which said two notes should be held as security; that they demanded payment of said amount, and also of the $250 loaned by Alston to Angier, before the institution of this suit; that Angier refused to pay the same; that Angier had instructed them to sell the notes for what they would bring, and that they had sold said notes to the defendant Coward in accordance with such instructions before the institution of this suit for $300; that Coward was insolvent; that these notes were secured only by the land in controversy, and that the fair market value of the land was about $300 at the time of the sale of the notes.

Plaintiffs by their second supplemental petition denied generally the averments contained in the answer of Alston's legatees.

At the March Term, 1888, the case was tried without a jury, and there was judgment rendered in favor of plaintiffs for the land upon the payment to the defendant by them of $350 within ninety days. There was a judgment of dismissal as to the Alston legatees.

The plaintiffs in the lower court, E. L. Angier and wife, have prosecuted this writ of error, and the judgment is before us for review.

The correctness of several conclusions found by the court is questioned by the assignments of error. But we think the disposition of this cause depends upon and is involved in the question of the validity of the bond for title executed by the plaintiffs in error to convey the wife's separate real estate, and whether such a contract can be specifically enforced against them. The court below found as a conclusion of law that "the defendant Coward having the equitable title by the bond for title, and being the owner of the notes, full title vested in him, subject to the right of Mrs. Angier to recant before making deed."

The leading purpose of the statute (article 4310 Revised Statutes) pre-

scribing the character of acknowledgement to any conveyance or other instrument conveying the separate property of married women was to secure freedom of will and action on the part of the wife. Womack v. Womack, 8 Texas, 413.

It was not intended to limit or restrict her in the exercise of the right or power of alienation to any character of conveyance or contract which she in connection with her husband might deem advantageous to be made with respect to her separate realty. If it was so intended it would certainly be inconsistent with the recognized general purpose underlying the law to afford her, as far as practicable, the utmost freedom in its disposition.

The statute does not attempt to define the character of conveyance or contract which would be necessary to transfer the title to the wife's separate property. Nor do we think that anything is contained in our law regulating conveyances that would indicate that the Legislature contemplated that the legal effect of any instrument executed by the wife to transfer her property was to be changed or its status in any manner affected by the privy examination of the wife.

That examination was necessary to its validity, to the extent of showing that she executed it voluntarily, etc.

If she was free to act, and so declared herself, and that she wished not to retract it, the essential facts existed which, if properly embodied in an official certificate of acknowledgement, would make valid and binding the instrument so acknowledged. But the instrument itself was to be determined by the well settled principles applicable to conveyances of real property.

A bond for title in this State it is well understood passes the superior title to the land in equity. Thompson v. Wright, 14 Texas, 561. The rights of the wife in equity with respect to her separate property are recognized with us to the same extent that they are under that system of jurisprudence.

Says Chancellor Kent: "She possesses the power to a great extent of a *feme sole* over her separate property in which she has an absolute interest. Incidental to this right she has the necessary power of charging, encumbering, or disposing of it." 2 Kent, 166.

It was held in Hollis v. Francois, 5 Texas, 199, and Cartwright v. Hollis, 5 Texas, 156, in substance, that as the wife could make an absolute sale of her estate she could make a conditional disposition thereof.

Again in Patton v. King, 26 Texas, 687, it was held that a power of attorney executed by the wife authorizing the conveyance of her separate estate would support a deed made in pursuance thereof. The same question is decided in Warren v. Jones, 69 Texas, 462, which cites with approval Patton v. King.

In the case of a power of attorney executed by the wife, properly ac-

knowledged and authorizing the conveyance of her separate property, she can not, if the purchaser's rights have attached, interpose and by her retraction prevent the execution of the deed authorized by the power.   This is so because the acknowledgment to the first instrument gives validity to the subsequent act of her agent, and her right of retraction was thereby exhausted.

In the case under consideration her power and right to retract was exhausted in the execution of the bond for title.   The rights and liabilities of the parties then attached, and they should not be impaired or affected by or made subject to the subsequent retraction by the wife, when she had previously exercised and exhausted this right.

If the title would vest only in the vendee under a bond for title "subject to the wife's right to retract," the same result would follow if she executed and acknowledged a deed absolute on its face.   In that case, if the purchase money was not wholly paid at the time of its execution, then when it was tendered by the purchaser, according to this doctrine she could refuse upon the ground that she wished to retract it and vacate the deed.   In the case mentioned, a part of the consideration only being paid, the deed would be, as the bond for title, but an executory contract to convey the land.

The same rule would apply to any character of instrument which might be executed by her if anything remained to be done.   We conclude, therefore, that the court erred in holding that the title of Coward to the land was subject to the right of Mrs. Angier to retract.

In the case of Goff v. Jones, 63 Texas, 249, it was correctly held, we think, that an executory conveyance by the husband and wife of the homestead could not be enforced as against the wife.   This was put upon the ground that to do so would deprive her of the right to retract, etc.   But we do not see that this principle is necessarily applicable to a conveyance of the separate property of the wife.   There is, in our opinion, a broad distinction between the two which we are not called upon to discuss.

There are constitutional provisions relating to the sale of the homestead which plainly show that its conveyance by the husband and wife was not to be governed by the same rules that apply to the conveyance of the separate property of the wife.

The judgment should have vested the title to the land in the appellee, Coward, upon the payment by him of the amount of the purchase money due if he offered to make such payment.   He purchased the notes after maturity from Alston's executor, they having been transferred to Alston by appellants as security for $250 loaned them by Alston.   Appellee obtained the notes for $100 less then their face value.   But under the facts this did not release him from his contract to pay the amount agreed upon for the land, to-wit, $500.   Of this sum appellants had received $350.

We find no admission in the pleadings nor evidence which would au-

thorize a judgment for the second tract of 20 acres. The judgment seems to describe the same tract twice. We think the judgment should be reversed and the cause remanded.

Adopted February 10, 1891.