BLAKELY v. KANAMAN et al.  (No. 6547.)

(Court of Civil Appeals of Texas. Galveston. May 12, 1914. Rehearing Denied June 11, 1914.)

1. HUSBAND AND WIFE (§§ 8, 79*)—MARRIED WOMEN—POWERS—SEPARATE PROPERTY.

At common law a married woman possessed no contractual capacity whatever, but her separate estate at the time of her marriage became absolutely the property of her husband for the purposes of control and sale.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 19–29, 317–323, 329; Dec. Dig. §§ 8, 79.*]

2. HUSBAND AND WIFE (§ 187*) — MARRIED WOMEN—SEPARATE PROPERTY — TRANSFER— EXECUTORY CONTRACT.

Under Paschal's Dig. art. 1003, authorizing a married woman to "convey" her separate property only when she and her husband joined in the conveyance, the instrument to take effect on its being acknowledged by the wife privily and apart from her husband, she had no power to execute an executory contract for the sale of her separate real property while married.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 722, 723; Dec. Dig. § 187.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by Bassett Blakely against Clara Kanaman and husband. Judgment for defendants, and plaintiff appeals. Affirmed.

B. F. Louis, of Houston, for appellant. T. H. Stone, of Houston, for appellees.

McMEANS, J. Bassett Blakely, appellant, brought this action against Clara Kanaman, a femme covert, and her husband, W. I. Kanaman, to enforce specific performance of a contract of sale of real estate, the separate property of the wife. Defendants urged general and special demurrers to plaintiff's petition which were sustained by the court, and thereupon, the plaintiff declining to amend, his suit was dismissed, and, from the judgment sustaining the demurrers and dismissing his suit, plaintiff has appealed.

Plaintiff in his petition alleged the terms of a contract of agency and sale which was entered into by and between Clara Kanaman and her husband, W. I. Kanaman, and William H. Olschewske, a copy of which is attached to the petition as an exhibit, and which is as follows:

"The State of Texas, County of Harris.

"This contract of agency, and sale, made and entered into by and between Mrs. Clara Kanaman, and her husband, W. I. Kanaman of Dallas county, Texas, parties of the first part, and William H. Olschewske, party of the second part, witnesseth:

"First. That in consideration of the sum of ten dollars cash in hand paid, to the parties of the first part by the party of the second part, and the further consideration of the service rendered and to be rendered by the party of the second part, in procuring a purchaser or pur-

chasers, and effecting a sale and exchange of the hereinafter described property upon the terms hereinafter set out, parties of the first part obligate and bind themselves to make due conveyance of the property hereinafter described in accordance with such terms, and agree to pay to the said party of the second part 2 per cent. in cash, upon the value of the property of the said parties of the first part, as evidenced by such exchanges, which valuation is here now evidenced to be $155,000, which said percentage shall be as commission for the service of said party of the second part.

"Second. The party of the second part shall have 20 days from the date hereof in which to produce the purchasers or purchaser for the sale and exchange of said property upon the terms as hereinafter set forth.

"Third. The property of the parties of the first part hereinbefore referred to, which said parties of the first part agree to exchange, sell and convey by a general warranty deed, and which, during the period aforesaid, the party of the second part is given the exclusive right to sell, is described as follows: Situated in the county of Harris, state of Texas, city of Houston, S. S. B. B., and being lots 1, 2, 12, and adjoining ½ of lot 3, in block 139, situated on the corner of Main street and Lamar avenue.

"Fourth. The party of the second part shall and agrees to procure a purchaser or purchasers who shall be able, willing and ready to purchase the hereinabove described property, upon the following considerations and terms, to wit: Such purchaser or purchasers as part consideration shall agree and be able to exchange by general warranty deed, convey good title, the property located at the corner of McKinney avenue and Travis street, being the north 75 feet by 50 feet off of each of lots 9 and 10, out of the block No. 140, S. S. B. B., city of Houston, Harris county, Texas, and forming a tract 75 feet on Travis street by 100 feet on McKinney avenue, in addition to the exchange and conveyance of said last-named tract, such purchaser or purchasers shall be able, willing and ready to pay the additional sum of $90,000, which said additional sum may, at the option of such purchaser or purchasers, be payable as follows: By the assumption of a certain promissory note under date of April 17, 1909, and payable to the order of the Rice Institute for $25,000, bearing interest at the rate of 6 per cent. interest payable semiannually, and the remaining balance of $65,-000 payable in cash or the assumption of the Rice Institute note, and cash payment of $25,-000, and the remaining sum of $40,000 in one installment, evidenced by vendor's lien note, executed by said purchaser or purchasers, payable in 3 years from date, bearing interest at 6 per cent. per annum, payable semiannually, and which said note shall provide and contain the privilege to pay any and all of said note at the option of the makers, upon any interest paying period, it being provided as aforesaid that such purchaser or purchasers shall have the option to accept either of the terms above set forth, for payment of the amount in addition to the exchange of the property as set forth above. The said purchaser or purchasers, when procured as aforesaid, shall deposit the sum of $5,000 as earnest money with the party of the second part, in cash or in certified checks, conditioned that if the abstract of title to be furnished by the parties of the first part shall show good title in them, or either of them, then unless said purchaser or purchasers agree to accept said title and close the sale upon the terms herein set out, then said earnest money shall be forfeited to the parties of the first part and the party of the second part equally, as liquidated damages, otherwise said earnest money so deposited shall be applied as part of the payment upon the purchase price of said property.

"Fifth. The parties of the first part agree to furnish to such purchaser or purchasers within 30 days from the date hereof a complete abstract of title to the property above described, which, as provided herein, they shall convey, and the said purchaser or purchasers shall also agree to furnish a complete abstract of title to the property described above which they are to convey in exchange in part payment within the same time and the said parties of the first part and the said purchaser or purchasers shall have 30 days from the delivery of such abstracts within which to examine the same, and if such abstracts show good title in the parties of the first part as to the land to be conveyed by them, and in said purchaser or purchasers as to the tract to be conveyed by them, then the sale must be consummated within 30 days from the expiration of the time within which such abstracts shall be examined, and found to show good title, and, in the event the title to the respective parties to either tract shall be found to be defective, the respective parties who are to convey said land obligate themselves to perfect the title to their respective tracts, within a reasonable time thereafter.

"Sixth. The parties of the first part shall pay the pro rata portion of the taxes for the year 1912 up to the time the deal is closed, in addition to all back taxes, and the said purchaser or purchasers shall likewise pay the pro rata portion of the taxes for the year 1912, upon the property to be conveyed by them, as well as all back taxes.

"This contract is executed in duplicate, this the 9th day of April, 1912."

This contract was signed and duly acknowledged by the parties; the said Clara Kanaman's acknowledgment being taken in the manner and form prescribed by law for acknowledgment of deeds by married women.

Plaintiff further alleged that, in pursuance of the terms of the contract above copied, the William H. Olschewske, therein referred to, executed a contract of sale with plaintiff, Bassett Blakely, which contract is specifically alleged in all its terms and is attached to the petition as an exhibit, and is as follows:

"State of Texas, County of Harris.

"This contract of bargain, sale and exchange, made and entered into this the 20th day of April, 1912, by and between Mrs. Clara Kanaman and her husband, W. I. Kanaman, of Dallas county, Texas, parties of the first part, acting by and through their duly authorized agent, William H. Olschewske, of Harris county, Texas, and Bassett Blakely, party of the second part, witnesseth:

"One. The party of the second part has this day delivered to said William H. Olschewske, as agent for the parties of the first part, certified check in the sum of five thousand dollars ($5,000) payable to said William H. Olschewske as earnest money to bind the sale to said party of the second part, of the hereinafter described property, upon the terms hereinafter set out, and in accordance with the contract of agency and sale, of date April 19, 1912, executed by and between W. I. Kanaman and Clara Kanaman on the one part and William H. Olschewske on the other part, as is hereinafter shown.

"Two. The said parties of the first part have this day bargained and sold, and by these presents do hereby bargain and sell and obligate themselves to convey to the said party of the second part, all and singular, the following described property, situated in the county of Harris, state of Texas, city of Houston, south side of Buffalo bayou, and being lots numbers one (1), two (2), twelve (12), and the adjoining ½ (one-half) of lot number three (3), in block number one hundred and thirty-nine (139)

situated on the corner of Main street and Lamar avenue.

"Three. The consideration paid and to be paid to the parties of the first part, by said party of the second part, for the property above described, is as follows: The conveyance by general warranty deed, conveying good title from the party of the second part, to the parties of the first part, of that certain property located at the corner of McKinney avenue and Travis street, and being the north seventy-five (75) feet by fifty (50) feet off of each of lots numbers nine (9) and ten (10), out of block one hundred and forty (140) south side of Buffalo bayou, city of Houston, Harris county, Texas, and forming a tract of seventy-five feet on Travis street by one hundred (100) feet on McKinney avenue; and in addition thereto the payment of the sum of ninety thousand dollars ($90,000), payable as follows: Party of the second part shall assume that certain promissory note under date of April 17, 1909, and payable to the order of the Rice Institute, for twenty-five thousand ($25,000) dollars, bearing interest at the rate of six (6) per cent. interest, payable semiannually, and the payment in cash of twenty-five thousand ($25,000) dollars, of which the certified check herein receipted for shall be taken as a part, and the execution of one vendor's lien note, in the sum of forty thousand ($40,000) dollars, executed by the party of the second part to the parties of the first part, payable in three years from date thereof, bearing interest at six (6) per cent. per annum, interest payable semiannually, and which said note shall provide and contain the privilege to pay all or any part of said note, and the option of the maker upon any interest paying period.

"Four. The parties of the first part agree to furnish the party of the second part, within thirty (30) days from the date hereof, a complete abstract of title to the property first hereinabove described, which, as provided herein, they agree to convey to the party of the second part, and the said party of the second part agrees to furnish a complete abstract of title to the property last described above, which, as provided herein, he is to convey in exchange in part payment, within like time, to wit, thirty (30) days from the date hereof; and the parties of the first part and the party of the second part shall have thirty (30) days from the delivery of such abstracts herein within which to examine same; and if such abstracts show good title in the respective parties who are to convey said different tracts as stated, then the sale must be consummated within thirty (30) days from the expiration of the time within which such abstracts shall be examined and found to show good title; and in the event the title of the respective parties to the tract to be conveyed by such party or parties shall be found to be defective, the respective parties who are to convey said land obligate themselves to perfect the title to their respective tracts within a reasonable time thereafter.

"Five. It is agreed that if the abstracts of title furnished by the parties of the first part to the property to be conveyed by them, as hereinabove set out, shall show good title in them, or either of them, then unless said party of the second part accepts said title, and closes the sale, in accordance with the terms herein set out, then the said earnest money herein receipted for shall be forfeited to the parties of the first part, and the said William H. Olschewske, their agent, equally, as liquidated damages, thereupon the parties of the first part to be released therefrom, and this contract to be of no further force and effect.

"Six. The parties of the first part agree to pay the pro rata portion of the taxes for the year 1912, up to the time the deal is closed, in addition to all back taxes upon the property to be conveyed by them, and the said party of the second part agrees to pay the pro rata portion of the taxes for the year 1912, up to the same time, upon the property to be conveyed by him, as well as all back taxes.

"This contract is executed in triplicate, this the 20th day of April, 1912."

This contract was duly signed and acknowledged by both of the parties thereto.

Plaintiff further alleged tender of performance upon his part of all obligations and conditions by him to be performed under the terms of his contract; that he demanded compliance with the contract upon the part of defendant Clara Kanaman and her husband, and of their refusal to comply therewith.

The questions raised by the demurrers are practically these: (1) It being alleged that the property was the separate property of the wife, she could not be bound by an agency contract of sale; (2) that the contract of agency entered into with the agent, Olschewske, was only a contract to find and produce a purchaser, with no authority on the part of such agent to bind the wife to a contract of conveyance; and (3) the contract alleged by plaintiff is in contravention of the statute of frauds.

Appellant under appropriate assignments of error, urges the proposition that:

"The executory contract of a married woman to convey her separate real estate when she is joined by her husband, and the instrument is properly acknowledged, can be enforced by decree of specific performance, as against the wife."

This is met by appellees by the following counter proposition:

"A contract to convey the separate estate of the wife, executed by the husband and wife, and separately acknowledged by the wife, cannot be enforced against her will, because under the statute she has no power to contract to convey, but only the power actually to convey her separate estate."

The proposition and counter proposition fairly raise the principal question which this court is called upon to decide.

The only statute conferring upon the wife the power to dispose of her separate real estate is article 1114, Revised Statutes 1911, which provides:

"The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall be acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded, and certified to in the mode pointed out in articles 6802 and 6805."

[1] At common law the wife possessed no contractual capacity whatever. Wadkins v. Watson, 86 Tex. 194, 24 S. W. 385, 22 L. R. A. 779. The separate estate she possessed at the time of her marriage became absolutely the property of the husband for the purposes of control and sale. She was without capacity to convey her separate estate. The common law was adopted in Texas in 1840 and, at the time of the execution of the contracts above copied, existed as effectively as it did at the time of its adoption, except in so far as the same may have been modified by statute.

[2] Soon after the adoption of the common law, however, an act was passed defining the separate property of the wife, and providing the method for its conveyance, the present statute, with respect to the method of conveying the separate property of the wife, is substantially the same as the original act. Paschall's Dig. art. 1003. At the time of the execution of the contract, no authority was given for the disposing of the wife's separate estate other than that provided in article 1114. That authority was to convey, and then only when the husband and wife should join in the conveyance; and then the instrument did not take effect as such until acknowledged by the wife privily and apart from her husband. Unless the article authorized her to enter into a contract for the sale of her separate real estate, the wife is without authority in this state to make such a contract as could be enforced in equity. Does the statute, then, confer any such authority? Is an instrument, not a conveyance, by the terms of which the wife agrees to make conveyance on the fulfillment of certain conditions, so binding upon her as to authorize the court to compel her to convey?

It has been held that a bond for title is an executory contract of sale, and that such a contract made by the wife, when joined by the husband and properly acknowledged, can be specifically enforced. Angier v. Coward, 79 Tex. 554, 15 S. W. 698; Wright v. Thompson, 14 Tex. 561; Neyland v. Ward, 22 Tex. Civ. App. 369, 54 S. W. 605; Jones v. Goff, 63 Tex. 256; Ley v. Hahn, 36 Tex. Civ. App. 208, 81 S. W. 354.

But this ruling is based upon the principle that a bond for title passes the superior title to the land in equity; in other words, it is a conveyance. Angier v. Coward and Wright v. Thompson, supra. In the case last cited, in discussing the validity of a bond for title as a conveyance of the wife's separate real estate, it is said:

"It is an admitted principle that, in an executory contract for the sale of land, equity considers the vendor and vendee reciprocally trustees for each other, one for the land and the other for the purchase money. In contemplation of equity, the vendee is actually seised of the estate; and his seizure becomes perfect on the payment of the purchase money. We have repeatedly decided that the equitable title of the vendee, who is not in default, may be set up in defense, against an action by the vendor, to eject him from possession, and that such title will sustain an action for the recovery of the land. [Miller v. Alexander] 8 Tex. 42; [Browning v. Estes] 3 Tex. 462. The title of the vendee not in default, and especially after payment of the purchase money, is superior to that of the vendor. In fact, the latter is but a shadow, contrasted with the substance and efficiency of the former."

It has also been held that a married woman can, jointly with her husband, make a valid conveyance of the lands, her separate property, by an attorney in fact duly authorized by power of attorney, executed and acknowledged in the manner prescribed by law for the execution and acknowledgment of deeds of conveyance. Patton v. King, 26 Tex. 686, 84 Am. Dec. 596; Warren v. Jones, 69 Tex. 462, 6 S. W. 775. In the case last cited the ruling in Patton v. King is approved, and it is stated that the power of attorney, when followed by the deed of her agent, is treated as the conveyance itself.

It is settled law in this state that the wife can by the joinder of the husband, and her privy acknowledgment, execute a valid and binding trust deed upon her separate property to secure a debt of her husband, or the debt of a third party in which she has no interest whatever. Kellett v. Trice, 95 Tex. 161, 66 S. W. 51; Hall v. Dotson, 55 Tex. 520. In Kellett v. Trice, it is said that:

"In virtue of her power of conveying, the wife, by pursuing the statutory mode, may mortgage her property to secure the debt of her husband or of a third party; the power to convey the absolute title being held to include the lesser power of mortgaging, and the mortgage being sustained as a species of conveyance."

Thus the three forms of executory contract for the conveyance of the wife's separate lands, viz., by bond for title by power of attorney when the purchaser's rights have attached, and by deed of trust or mortgage, are recognized as valid and binding upon the wife when joined by her husband and properly executed and acknowledged, upon the principle that each is a conveyance of her separate estate, as distinguished from a mere contract to convey.

We have found no case, and our attention has been directed to none, holding that an executory contract of a wife to convey her separate real estate, such as the contract under discussion, can be specifically enforced. In Angier v. Coward, supra, strongly relied upon by appellant, Mrs. Angier, joined by her husband, executed to Coward her bond for title to convey to him certain land, the separate property of Mrs. Angier, in consideration of $100, then paid, and the execution by Coward of two promissory notes for $200 each, due, respectively, on the 1st days of January, 1884 and 1885. The notes were afterwards transferred by Angier as collateral security for a loan from one Alston. Coward was placed in possession under the bond. In 1887 Angier and his wife brought suit against Coward in the usual form of trespass to try title to recover the land, and on the trial she testified that she wished to retract the bond for title executed by her. No deed was made by the Angiers to Coward. The trial court found as a conclusion of law that the "defendant Coward having the equitable title by the bond for title, and being the owner of the notes, full title rested in him, subject to the right of Mrs. Angier to recant before making the deed." In reversing this ruling, Judge Hobby of the Commission of Appeals says:

"In the case under consideration her power and right to retract were exhausted in the execution of the bond for title. The rights and liabilities of the parties then attached, and they

should not be impaired or affected by or made subject to the subsequent retraction by the wife, when she had previously exercised and exhausted this right."

Some expressions by the learned judge in the opinion might indicate that in his opinion it was not intended by the statute to limit or restrict the wife in the exercise of the power of alienation of any character of conveyance or contract which she, in connection with her husband, might deem advantageous to be made with respect to her separate realty, but the only question before the court for decision was upon the efficacy of the bond for title as a conveyance, as shown by this quotation from the opinion:

"But we think the disposition of this cause depends upon and is involved in the question of the validity of the bond for title executed by plaintiffs in error to convey the wife's separate real estate, and whether such a contract can be specifically enforced against them."

Any expression of opinion to the effect that the wife might bind herself by any other character of contract that she and her husband might deem advantageous with respect to her separate realty was not called for by the facts of that case, nor by the question of law under discussion, and therefore must be treated as dictum. But, on the other hand, it seems settled in this state that the wife cannot bind herself by an executory contract, not amounting in itself to a conveyance of the legal or equitable title, for the sale of her separate realty. This seems to be the ruling in Kellett v. Trice, 95 Tex. 161, 66 S. W. 51, from which we quote:

"It is settled by the decisions of this state that married women have no power, except such as is affirmatively given by statute, to bind themselves personally by contracts. Wadkins v. Watson, 86 Tex. 194 [24 S. W. 385, 22 L. R. A. 779]; Kavanaugh v. Brown, 1 Tex. 481. Among the powers so given is that of making conveyances of their separate property in the mode prescribed in the statute, when joined by their husbands. It is obvious, therefore, that an agreement by a married woman, attempting to convert her separate estate into community property, however executed, must be invalid, unless her act amounts to a conveyance such as is recognized by the law. * * * In virtue of her power of conveying, the wife, by pursuing the statutory mode, may mortgage her property to secure the debt of her husband or of a third party; the power to convey the absolute title being held to include the lesser power of mortgaging, and the mortgage being sustained as a species of conveyance. It is also held that different methods of conveyance may be adopted, and that husband and wife are not confined to deeds jointly signed by them. Thus they may convey through the agency of an attorney in fact, empowered by their joint power of attorney duly executed or acknowledged (Patton v. King, 26 Tex. 685 [84 Am. Dec. 596]), or the wife may be empowered by the husband to sign his name to the deed, and the conveyance thus executed by her for both will pass title (Rogers v. Roberts, 13 Tex. Civ. App. 190, 93 Tex. 649 [35 S. W. 76]). These are but instances of different kinds of conveyances. In each of them the separate title which the wife possesses, or an interest in it, passes to and vests in the grantee, and her act is therefore strictly within the power given to convey her property. On the other hand, the policy of the law protects the wife's property from liability from her husband's debts, and she cannot make it subject to them by mere agreement not amounting to some kind of legal conveyance. Magee v. White, 23 Tex. 180. * * * The power to convey does not therefore enable her to contract generally with reference to her separate property, but only to dispose, in whole or in part, of her title; and the only operation which her conveyances have is. to pass such title or some interest in it. Wadkins v. Watson, supra. * * * The one power the wife had was to convey her title and, by her conveyance, invest her grantee with the right conveyed. The power she tried to exercise was, by the form of a conveyance, to make a contract changing the legal character of the property. As we have seen, the power of conveying does not include the power to do any such thing."

In City of San Antonio v. Grandjean, 91 Tex. 430, 41 S. W. 477, 44 S. W. 476, Mrs. Grandjean sued the city of San Antonio to recover land which, during marriage, had been her separate estate, but which, during marriage, had been condemned by the city in a suit against the husband alone, and the money awarded was deposited in the bank, the husband withdrawing the one half claimed by him but the wife, declining at first to receive the other half, finally accepted it. Subsequently the husband and wife were divorced, which was her status at the time of filing suit. In considering this case the court says:

"The question is: Can she, under these circumstances, reclaim the property? If the rights of the parties were to be determined upon the principles governing ordinary conveyances of real estate, the separate property of a married woman, the point would not be difficult to resolve. The rule in this state, as in many other jurisdictions, is that the title of the femme covert to her real estate will neither pass nor be affected by her attempted conveyance, except by a deed duly acknowledged by her upon privy examination and duly certified. Neither a deed not duly acknowledged, nor the reception and appropriation by her of the consideration, nor her subsequent acts showing her acquiescence, nor all these together, will estop her from asserting her title. A contrary rule would enable that to be done indirectly which the statute declares shall be done only by a certain method, and would defeat the purpose of the law. * * * Let us apply these principles to the present case. If Mrs. Grandjean had been sui juris when she drew the $17,500 out of the bank, it is clear that she could not reclaim the property. Does the fact of her coverture make a difference? Under our law, a married woman's separate property is hers in her own right. This right, except where restrained by statute, carries with it the power of alienation. Under the first section of the act of April 30, 1846 (Pas. Dig. art. 1003), which applied to 'the land, slaves and other effects, the separate property of the wife,' it was held that the wife, with the consent of her husband, might make a sale of her personal property without formality, provided the contract was not made in writing. Ballard v. Carmichael, 83 Tex. 355 [18 S. W. 734]. Our present statute upon the subject applies to her real estate only. Rev. St. [1895] art. 635. Under that article, it was held by the former Court of Appeals, correctly, as we think, that she could convey her personal property without privy examination and acknowledgment. By the word 'conveyance,' as used in the article last cited, is meant an instrument which purports to transfer the title of the wife to some other person natural or artificial."

In 21 Cyc. 1320, it is said that an agreement of a married woman to sell her real estate is void at common law, even though her husband assents to it, and that a statute authorizing her to convey her common-law property does not make her mere agreement to convey the same a valid contract, since a contract to convey is not a conveyance, and that this rule applies to her separate estate; and in support of the text decisions are cited from the states of Arkansas, Connecticut, Indiana, Maine, New Jersey, Tennessee, and Pennsylvania.

In Wadkins v. Watson, 86 Tex. 202, 24 S. W. 385, 22 L. R. A. 779, it is held that the statutes conferring upon married women the power to convey their separate estates do not confer power on a femme covert to bind herself even by express covenants in a deed, which, if given effect, would operate to prevent her successful assertion of an after-acquired title.

It follows, from what we have stated, that it is our conclusion that the executory contract made by Mrs. Kanaman with Mr. Olschewske, for the sale of her separate estate, is not binding upon her, and that, under the facts stated, the appellant Blakely could not enforce its specific performance. It was not error, therefore, to sustain the demurrers. These conclusions obviate the necessity of passing upon other assignments of error presented by appellant. The judgment of the court below is affirmed.

Affirmed.