### CUTBIRTH et al. v. SNOWDEN.
### No. 4861.

Court of Civil Appeals of Texas. El Paso.

May 14, 1952.

Rehearing Denied June 25, 1952.

John Perkins and Frank Bezoni, Midland, Scarborough, Yates, Scarborough & Black, Abilene, for appellants.

Slay & Slay, Ft. Worth, James A. Lore, Midland, for appellee.

SUTTON, Justice.

Appellants instituted this suit against appellee to remove cloud on their title to an interest in some ten sections of mineral land in Midland, Glasscock and Upton Counties, and to have cancelled and held of no effect a certain agreement by which they agreed to sell said land to appellee, and a certain royalty deed executed by them which purported to convey said land to appellee. These instruments were dated January 17, 1951.

Defendant filed a cross-action in which he made the Midland National Bank, hereinafter referred to as "the bank" a party defendant, and in which by the statutory action of trespass to try title he sought to recover title and possession of the land, and in the alternative sought specific performance of the agreement of January 17, 1951, and to require the bank to deliver a royalty deed which was in its possession to him. The bank answered that it was named escrow agent under the agreement of January 17, 1951, and had in its pos-

session the deed and $20,000 therein referred to, and was a disinterested stakeholder; it tendered the deed and money into court and prayed that it be dismissed with reasonable attorney's fees. Trial to the court without a jury resulted in a judgment that plaintiffs take nothing and ordering the clerk to pay to plaintiff Mary Ethel Cutbirth the $20,000 tendered into court by the bank and to deliver the royalty deed to defendant Snowden. The bank was awarded $100 as attorney's fee, which was taxed as costs against plaintiff.

The agreement of January 17, 1951, around which the controversy centers, is reproduced:

"The attached royalty deed, made a part hereof, executed on the 17th day of January, 1951, by and between Lige Cutbirth and wife, Mary Ethel Cutbirth, hereinafter called seller, and James H. Snowden, hereinafter called buyer, together with draft of seller drawn on buyer for Twenty Thousand Dollars ($20,000.00), is herewith deposited in The Midland National Bank of Midland, Texas, in escrow subject to the following terms and conditions:

"The seller agrees to forthwith prepare and deliver to the buyer, for examination by his attorney, a complete abstract of title to the land described in the royalty deed, brought down to date, and to allow ten days from date of receipt of abstracts for the examination of said title by the attorneys for buyer. In this connection all abstracts must be delivered to buyer within ten days hereof.

"If title to said royalty, as covered by the said royalty deed, is good as shown by said abstracts, the buyer shall accept said royalty deed and same shall be delivered to him and the draft shall be delivered to seller.

"If the title is not good as shown by said abstracts the seller shall have five days after the receipt of the opinion of the attorney for the buyer in which to cure the defects in the title pointed out in such opinion, and agrees to use reasonable diligence to cure same and if such defects be cured within the five day period the transfer shall be consummated by delivery as above provided.

"If the title is not good and cannot be made good within the five day period as above specified, this contract shall be at an end and the royalty deed shall be cancelled and the draft hereto attached shall be returned to the buyer and all parties hereto shall be released, provided, however, buyer shall have the right at his option to waive any defects in title and accept the royalty deed, in which event the draft shall be delivered to seller.

"The bank herein designated as escrow agent is authorized and directed to send said royalty deed and draft to any bank in Fort Worth, Texas, named by buyer for inspection by buyer, and said bank in the event of acceptance by buyer may collect said draft and make delivery of the royalty deed.

"This agreement is executed in triplicate, one original of which, with the royalty deed and draft, is deposited with the said escrow agent, and the other two, with an exact copy of said deed attached to each as a part thereof, are delivered to the parties hereto respectively.

"/s/ Lige Cutbirth
"/s/ Mary Ethel Cutbirth
                    "Seller
"/s/ Jas. H. Snowden
                    "Buyer."

This instrument was not acknowledged by any of the parties thereto. The royalty deed referred to purports to convey 200/6428.5 interest in the minerals under the designated sections of land lying in Midland, Glasscock and Upton Counties. It has a joint acknowledgment by Lige Cutbirth and Mary Ethel Cutbirth, husband and wife, certified in the statutory form. It is stipulated that the lands described in the agreement and deed were the separate estate of Mary Ethel Cutbirth on and before January 17, 1951.

Appellants have presented six points, which we think unnecessary to detail. Their substance is that the escrow agreement just quoted of January 17, 1951, was not binding on Mrs. Cutbirth because it was not privily acknowledged by her and further because it was executory and since the deed was to be delivered only in accordance with the terms of the agreement, Mrs. Cutbirth had the right to revoke the agreement and to recall the deed at any time before the defendant accepted it and paid the $20,000; that Mrs. Cutbirth did revoke the agreement and procured the deed from the bank before defendant had paid any money to the bank.

It is stipulated by the parties:

"* * * that under the terms of that agreement there was escrowed with said bank the royalty deed referred to therein, and a draft for twenty thousand ($20,000) Dollars; that on the 19th day of February, 1951, the deed, escrow agreement and draft were withdrawn by John Perkins as an attorney for the Cutbirths and that such instruments were delivered back to the bank on the 21st day of the same month at the request of the Bank, the instruments being returned by the Cutbirths subject to a letter of instructions from them to the Bank, this letter having accompanied the instruments; that on the 19th of February, 1951, the First National Bank of Ft. Worth, Texas, at the request of James H. Snowden wired to the Midland National Bank of Midland, Texas, twenty thousand ($20,000) Dollars, the money being wired by Snowden to the Bank after the escrow agreement had been withdrawn and revoked by Mrs. Cutbirth. * * *."

The letter of instructions referred to advised the bank that Mrs. Cutbirth did not recognize the escrow agreement as having any validity, and the bank was not authorized to deliver the deed under it. The royalty deed deposited with the bank was duly executed and in usual form and standing alone sufficient in all respects to convey the mineral interest therein described.

In the very outset plaintiffs are confronted with a decision which is as nearly parallel with the instant case as can well be found in any case which determines the case adversely to them and supports the judgment and determination of the trial court. Bott v. Wright, 62 Tex.Civ.App. 632, 132 S.W. 960, 961, (no writ history). The opinion is authored by an eminent judge and is by a court of equal dignity and authority as this, and unless it is clearly wrong it is thought this court ought not to put itself in conflict with it, but if wrong the Supreme Court should overrule it.

The transaction in the instant case is thought to be a typical escrow, then, as held in Bott v. Wright, supra, it cannot be revoked at the will of either party. See also 17 T.J., page 90, Sec. 4 and the cases there cited. In cases of escrow the equitable title passes, 17 T.J. p. 91, Sec. 5; Alworth v. Ellison, Tex.Civ. App., 27 S.W.2d 639 (c. r.); Cowden v. Broderick, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61 (T); and the title upon performance of the conditions relates back to the time when the deed was placed in escrow; last case cited 114 S.W.2d (1-4) page 1169.

It is said in Pickens v. Bacle, 129 Tex. 610, 104 S.W.2d 482(T) (1-3) page 485, that the conveyance to be effective need only convey the whole or a part of her title. The Supreme Court said in Blakely v. Kanaman, 107 Tex. 206, 175 S.W. 674, bonds for title, where the purchase money is paid and possession delivered, and mortgages of the separate property will be enforced as a species or another kind of conveyance. Such is not true with respect to the homestead, because of constitutional provisions and the policy of the courts long adhered to, to throw every possible safeguard around the homestead, providing, as the late Dean John C. Townes often said to his classes, a place where mothers in security may teach their children to love and revere God and country. In virtue of the authorities cited it is thought the royalty deed escrowed in the instant case and thereby put beyond the control of the wife

which conveyed the equitable interest or title in the mineral interest is a sufficient conveyance under the statute and the trial court's judgment correct.

McGILL, Justice.

I respectfully dissent from the majority opinion and disposition of this case. It is quite apparent, I think, that the agreement of January 17, 1951, is executory in its nature and does not purport to convey any present interest in the property described in the royalty deed. It is true that the agreement does provide that if title is good as reflected by the abstracts the buyer shall accept the deed, which shall be delivered to him and the draft shall be delivered to seller, and that such delivery should be made if defects be cured as provided, and that should defects be waived the deed and *draft* should be so delivered. (Emphasis mine.) However, the instrument must be construed as a whole. The clause

"The bank herein designated as escrow agent is authorized and directed to send said royalty deed and draft to any bank in Fort Worth, Texas, named by buyer for inspection by buyer, and said bank in the event of acceptance by buyer may collect said draft and make delivery of the royalty deed."

clearly evidences the intention of the parties that the draft should be collected before the deed should be delivered. Certainly it cannot be contended with any logic or reason that the sellers intended to part with the title to the land without any consideration other than a draft drawn on the buyer which he might or might not become obligated to pay. A different question might be presented had the buyer deposited the $20,000 with the bank at the time the agreement and deed were deposited with it. That question is not before us.

That the executory contract of a married woman to convey her separate estate is unenforceable in this State is well settled. Blakely v. Kanaman, 107 Tex. 206, 175 S.W. 674, 675; Pickens v. Bacle, 129 Tex. 610, 104 S.W.2d 482, 483, (Com. App. opinion adopted); Glover v. Donohoo,

Tex.Civ.App., 197 S.W.2d 531, loc. cit. 535 (7).

A valid contract of sale is necessary to render the deposit of a deed in pursuance of same a genuine escrow. Simpson v. Green, Tex.Com.App., 231 S.W. 375, loc. cit. 378(6) and authorities there cited. (Com.App. holding approved); Blue v. Conner, Tex.Civ.App., 219 S.W. 533; 30 C.J.S., Escrows, § 2, p. 1192; 21 C.J. p. 866, Sec. 2. As I construe the agreement of January 17, 1951, the bank was no more than the agent of the Cutbirths to collect the draft and deliver the deed upon collection thereof. Even though the agreement be construed as a genuine escrow, yet I think it is insufficient to operate as a present conveyance of title to the property, and is executory in its nature and was not binding on Mrs. Cutbirth until the deed should be delivered in accordance with the terms of the agreement and that prior to such time Mrs. Cutbirth had the right to repudiate the agreement and repossess the deed. That such is the law where the escrow involves a deed purporting to convey the homestead of a wife is well settled in this state. De Bell v. Schuetz, Tex.Civ. App., 65 S.W.2d 413, (wr. ref.); King v. Whatley, Tex.Civ.App., 236 S.W.2d 186, loc. cit. 191. wr. ref. n. r. e.; Jackson v. Scoggins, Tex.Civ.App., 220 S.W. 302, cited in Pickens v. Bacle, supra. I perceive no valid distinction in this respect between a deed to a homestead and a deed to the separate property of a married woman. Each requires a completed delivery, or at least the performance of the conditions on which the delivery is authorized before it becomes effective as a conveyance. Prior to such time the wife has a right to repudiate the escrow and repossess the deed. Mrs. Cutbirth could not bind herself to deliver the deed upon the contingencies specified in the agreement. At any time before actual delivery, she had the right to repudiate the agreement and repossess the deed from the bank.

The majority opinion lays much stress on the case of Bott v. Wright, 62 Tex.Civ. App. 632, 132 S.W. 961, 962, in fact it holds that this case is determinative of the

case at bar. A possible distinction is found in the following language of the opinion in Bott v. Wright:

> "Where, however, as there is evidence here tending to show, the wife surrenders to her husband a deed to her separate property duly made and acknowledged, for the purpose of delivery we think authority in the husband is to be implied to make such reasonable stipulations relating to the delivery of the deed to the grantee as shall not be violative of her instructions or in fraud of her rights."

It may be inferred from this language that it was the wife's intention that the deed be delivered by her husband to the purchaser without any condition, and that the evidence raised a jury question as to whether the husband imposed the condition of the escrow, i. e., that the deed should be delivered to the purchaser only upon his payment of the remaining unpaid part of the purchase money. If this was so the delivery was complete as far as the wife was concerned, when the deed was delivered to the bank and put out of the husband's control. Whether this is a valid distinction or not, and with all due respect to the distinguished jurist who wrote the opinion in Bott v. Wright, I am unable to distinguish the executory nature of an escrow as held in the homestead cases cited insofar as delivery of the deed is essential to bind the wife. I feel that these authorities, especially King v. Whatley, in which the judgment was approved by the Supreme Court by refusal of writ of error, n. r. e., control. In the other authorities cited by the majority, with the exception of Pickens v. Bacle and Blakely v. Kanaman, no question of separate property of a married woman was involved. In Blakely v. Kanaman [107 Tex. 206, 175 S.W. 675] Justice Phillips was careful to say that a bond for title conveys the superior title to land in equity only "Where the purchase money is paid and possession delivered". Only in such a case is a bond for title "a species of conveyance" and hence binding on the wife.

It is therefore my view that the judgment should be reversed and judgment here rendered as prayed for by appellants, granting Mrs. Cutbirth the relief prayed for in her petition.

### Concurring Opinion Overruling Motion for Re-Hearing.

PRICE, Chief Justice.

Careful and painstaking consideration has been given to appellants' motion for a re-hearing, but the majority has concluded that same is without merit. Beyond any question the property involved was the separate property of the wife. Section 15, art. 16, Vernon's Ann.St.Constitution defines the separate property of the wife and provides that

> "laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband * * *."

Section 15, art. 16 was amended by a provision going into effect November 2, 1948, but such amendment made no change as to the matters here involved. Art. 1299, Vernon's Ann.Civ.St. provides in substance as follows:

> "The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded, and certified to in the mode pointed out in articles 6605 and 6608."

It is elementary that a married woman under the circumstances here involved is without power to bind herself or her separate estate by an executory contract to convey same in the future. The case of Hammett v. Farrar, Tex.Civ.App., 8 S.W.2d 236 (writ denied) well illustrates this principle. In the case of Blakely v. Kanaman, 107 Tex. 206, 175 S.W. 674, 675, in speaking of art. 1114, Revised Statutes of 1911, which is in all material respects the same as art. 1299, R.S.1925, it is said:

> "This statute empowers her to convey such property when joined by her

husband and her acknowledgment is privily taken, but it recognizes no obligation resting upon her in virtue of a mere contract to convey unless it can be properly held that the power to convey imports the authority to contract to convey, this contract was not enforceable against Mrs. Kanaman."

The question to be determined here is did or did not the wife consummate an act in law which was tantamount to a conveyance? In the case of Angier v. Cowerd, 79 Tex. 551, 15 S.W. 698, 700, the appellee, Mrs. Angier, a married woman, executed a bond for title to convey her separate property. The consideration was the sum of $100 cash and two promissory notes for $200 due respectively one and two years after date. This contract was duly acknowledged by the appellant, Mrs. Angier. It seems Cowerd paid $100 and executed the notes. In the suit Mrs. Angier sought to repudiate the transaction. It was held, in brief, that in her privy acknowledgment before the Notary Mrs. Angier had barred herself from a retraction. In the course of the opinion Judge Hobby said:

"There is, in our opinion, a broad distinction between the [conveyance of the homestead and the conveyance of a wife's separate property], which we are not called upon to discuss. There are constitutional provisions relating to the sale of the homestead which plainly show that its conveyance by the husband and wife was not to be governed by the same rules that apply to the conveyance of the separate property of the wife."

In the instant case the deed executed by the wife was properly acknowledged, a sufficient act in law as vesting the title to the real estate in question in the plaintiff—in short, the wife had completely performed her part of the contract. The appellee was bound to perform, conditioned only on a good title being shown by the abstract. There arises then the question as to delivery of the deed. If a married woman cannot effect a delivery of a deed then she has not the power to convey.

When she caused the deed to be deposited with the bank she did not provide in the instrument accompanying same that she should have a right to repossess same. It could hardly be said that this was not a consummated transaction if appellee had paid the sum of money provided and taken the deed. In consideration for her deed she acquired appellee's unconditional promise to pay if the title were good, and his acceptance of a draft representing the purchase money. The deed was held to await the performance by the grantee to have the instrument take effect according to its import. She actually lost control of the deed. This is perhaps not sufficient—the question is, was it intended that the instrument pass beyond her control? It is hard to conceive where a married woman's separate property is not conveyed in pursuance of a contract, the legal consequences of a woman voluntarily taking steps effective in law and her agreeing to do so in the future are not the same. In the first case she consummates an act effective in law, and in the second she merely agrees to consummate the act effective in law. Here she has, we think, by the execution of her deed, properly acknowledged and placed with the escrow agent beyond control, consummated an act in law which she asks the trial court to undo. This is a genuine escrow. See Day v. Townsend, Tex.Com.App., 238 S.W. 213. Unless her definite intention was to place the deed in question beyond her control why deposit same with a third party with instructions to deliver. It is hardly conceivable that a married woman would or could convey her property without a contract or agreement of some sort. The agreement is unenforceable, but when the wife executes and delivers a deed in pursuance of such unenforceable contract the conveyance is effective as to her title.

It is ordered that the motion for rehearing be in all things overruled.